Vacated and remanded by published opinion. Judge MOTZ wrote the opinion, in which Judges KING, GREGORY, SHEDD, DAVIS, KEENAN, WYNN, and DIAZ joined. Judge DUNCAN wrote a dissenting opinion. Judge AGEE also wrote a dissenting opinion, in which Chief *239 Judge TRAXLER and Judges WILKINSON, NIEMEYER, and DUNCAN joined.
OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
After Jason Simmons pled guilty to federal drug trafficking, the district court held that his prior state conviction for marijuana possession, for which he faced no possibility of imprisonment, was for an offense “punishable by imprisonment for more than one year,” triggering a sentencing enhancement under the Controlled Substances Act. This enhancement doubled Simmons’s minimum sentence. We affirmed in an unpublished opinion. See United States v. Simmons, 340 Fed.Appx. 141 (4th Cir.2009). The Supreme Court vacated that judgment and remanded the case to us for “further consideration in light of Carachuri-Rosendo v. Holder,” - U.S. -, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010). A panel of this court then held that Carachuri did not require any change in our prior holding. See United States v. Simmons, 635 F.3d 140 (4th Cir.2011). We voted to rehear the case en banc, and for the reasons that follow, we now vacate Simmons’s sentence and remand for further proceedings consistent with this opinion.
I.
For first-time offenders who possess with intent to distribute at least 100 kilograms of marijuana, the Controlled Substances Act (CSA) mandates “a term of imprisonment” of at least five years. 21 U.S.C. § 841(b)(l)(B)(vii). But for offenders who engage in such conduct “after a prior conviction for a felony drug offense has become final,” the CSA mandates a “term of imprisonment” of at least ten years. Id. A separate provision of the CSA defines a “felony drug offense” as a drug-related “offense that is punishable by imprisonment for more than one year under any law ... of a State.” Id. § 802(44).
On August 6, 2007, a federal grand jury returned an indictment charging Simmons with three counts of marijuana trafficking under the CSA. The Government subsequently filed a Bill of Information, pursuant to 21 U.S.C. § 851, alleging that Simmons’s 1996 North Carolina conviction for possession with intent to distribute marijuana constituted a predicate “felony drug” conviction triggering the ten-year statutory minimum sentence set forth in the CSA. Simmons pled guilty to the federal charges but contended that his prior North Carolina conviction could not serve as a predicate for an enhanced sentence. The district court rejected Simmons’s objection to the enhancement and sentenced him to ten years’ imprisonment.[1] Without the disputed sentencing enhancement, Simmons’s Guidelines range would have been 63-78 months.
In an unpublished opinion, we affirmed Simmons’s sentence, although we acknowledged that Simmons “could not have re *240 ceived a sentence in excess of twelve months” for his North Carolina conviction. Simmons, 340 Fed.Appx. at 143. Subsequently, the Supreme Court vacated our judgment in this and a number of other cases, remanding the cases to us for reconsideration in light of Carachuri. See United States v. Thompson, No. 3:05-CR-294-2, 2010 WL 4236532, *3 (W.D.N.C. Oct. 21, 2010) (collecting cases). A panel of this Court concluded that Carachuri “does not implicate the analysis at issue in this case,” 635 F.3d at 146-47, and so again affirmed the judgment of the district court. We then voted to vacate the panel opinion and rehear the case en banc.
II.
A proper analysis of Simmons’s sentencing enhancement requires that we first place his prior North Carolina conviction in the context of the unique statutory regime mandated by the North Carolina Structured Sentencing Act (“the Act”).
A.
The Act creates felony sentences strictly contingent on two factors: the designated “class of offense” and the offender’s “prior record level.” N.C. Gen.Stat. § 15A-1340.13(b). Both factors are established by statute. The Act, or in some cases another state statute creating the offense of conviction, specifies the class of offense. Id. § 15A-1340.17(a). The Act mandates that the sentencing judge determine an offender’s prior record level by adding together the point levels (which the Act assigns) of each of the offender’s prior convictions. Id. § 15A-1340.14(a)-(b). The State bears the burden of proving the existence of these prior convictions. Id. § 15A-1340.14(f).
The Act then requires the sentencing judge to match the offense class and prior record level pursuant to a statutory table, which provides three possible sentencing ranges — a mitigated range, a presumptive range, and an aggravated range. Id. § 15A-1340.17(c). The presumptive range governs unless the judge makes written findings that identify specific factors, separately designated by the Act, that permit a departure to the aggravated or mitigated range. Id. §§ 15A-1340.13(e), 15A-1340.16(c). Moreover, the Act provides that a judge may select from the aggravated range only if the State has provided a defendant thirty-days’ notice of its intent to prove the necessary aggravating factors, id. § 15A-1340.16(a6), and a jury has found beyond a reasonable doubt (or the defendant has pled to) the existence of those factors, id. § 15A-1340.16(a)-(al).
Once the judge identifies the appropriate range, the Act provides that he must choose the defendant’s minimum sentence from within that range.[2] Id. § 15A-1340.17(c). After the judge chooses a defendant’s minimum sentence, a separate statutory chart then supplies the defendant’s corresponding maximum sentence. Id. § 15A-1340.17(d), (e). The Act, unlike the Federal Sentencing Guidelines, prohibits a sentencing judge from imposing a maximum sentence higher than the one fixed by the statutory chart. Id. § 15A-1340.13(b), (c).
B.
North Carolina designates Simmons’s predicate offense — possession with intent to sell no more than ten pounds of marijuana — as a Class I felony. Id. §§ 90-94, 90 — 95(b)(2); cf. id. § 90-95(h)(l). Under *241 the Act, a Class I felony is punishable by a sentence exceeding twelve months’ imprisonment only if the State satisfies two conditions. First, the State must prove (or the defendant must plead to) the existence of aggravating factors sufficient to warrant the imposition of an aggravated sentence. Id. § 15A-1340.16(a). Second, the State must demonstrate that the defendant possesses fourteen or more criminal history points, resulting in a “prior record level” of at least 5. Id. § 15A-1340.14(c)(5). If the State fails to satisfy either of these conditions, a Class I offender can never receive more than one year’s imprisonment. Id. § 15A-1340.17(c)(d).
The State satisfied neither condition in this case. First, the State did not provide Simmons notice of intent to prove any aggravating factors; this foreclosed the sentencing judge from imposing an aggravated sentence. Second, because as a first-time offender Simmons possessed a “prior record level” of only 1, the Act established a minimum sentencing range of four-to-six months’ community punishment (no imprisonment) and capped his maximum sentence at eight months’ community punishment (again no imprisonment). Id. § 15A-1340.17(e)-(d); id. § 15A-1340.11(l)-(2). In compliance with these requirements, the state judge did not sentence Simmons to a single day of imprisonment, instead imposing only six-to-eight months’ community punishment.
III.
Nevertheless, the Government correctly notes that if United States v. Harp, 406 F.3d 242 (4th Cir.2005), controls here, Simmons cannot prevail in challenging his sentence. In Harp, we held that “to determine whether a conviction is for a crime punishable by a prison term exceeding one year” under North Carolina law, “we consider the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history.” Id. at 246 (emphasis omitted). In our original 2009 unpublished opinion resolving Simmons’s appeal, we followed Harp and held that Simmons was convicted of an offense “punishable” by more than one year’s imprisonment. The Supreme Court has vacated that judgment and ordered us to reconsider the case in light of its subsequent precedent. After consideration of that precedent, we now conclude that Harp no longer remains good law.
A.
Last year, in Carachuri, the Supreme Court examined a provision of the Immigration and Nationality Act (INA) that allows an alien to seek cancellation of removal only if he “has not been convicted of any aggravated felony.” 8 U.S.C. § 1229b(a)(3). The statute further defines the term “aggravated felony” as including a “drug trafficking crime,” id. § 1101(a)(43)(B), which another statute defines as including “any felony punishable under the Controlled Substances Act,” 18 U.S.C. § 924(c)(2). A final statutory provision limits a qualifying “felony” to “a crime for which the ‘maximum term of imprisonment authorized’ is ‘more than one year.’ ” Carachuri, 130 S.Ct. at 2581 (quoting 18 U.S.C. § 3559(a)). Thus, at bottom the question presented was whether Carachuri had been “convicted of’ a crime “punishable as a federal felony” under the CSA — that is, a crime for which the “maximum term of imprisonment authorized” under the CSA exceeds one year. Id. at 2583.
In 2004, Carachuri had received a 20-day sentence for possessing less than two ounces of marijuana in violation of Texas law. See id. at 2583. In 2005, he received a 10-day sentence for possessing a Xanax *242 tablet without a prescription, also in violation of Texas law. Id. at 2583. Although Texas law permitted an enhanced sentence for recidivist possession, Texas did not seek to use the 2004 conviction to enhance Carachuri’s sentence for his 2005 conviction. Id. at 2583.
In contending that the 2005 Texas conviction nevertheless constituted a predicate “aggravated felony” conviction under the INA, the Government argued that if Carachuri had faced federal prosecution for the 2005 offense, he could have “received a 2-year sentence.” Id. at 2582. This was so because federal law provides for a sentence of up to two years for drug possession, as long as the offender has a “prior conviction for any drug ... offense chargeable under the law of any State.” 21 U.S.C. § 844(a). Given Carachuri’s prior 2004 conviction, he hypothetically could have received a two-year federal sentence for his 2005 Xanax offense. In view of this hypothetical, the Government argued that Carachuri’s 2005 conviction was for an aggravated felony that was “punishable” by imprisonment for more than one year, even though he actually received a sentence of only ten days’ imprisonment. Carachuri, 130 S.Ct. at 2587.
Although the Fifth Circuit had accepted this argument, see Carachuri-Rosendo v. Holder, 570 F.3d 263 (5th Cir.2009), the Supreme Court unanimously rejected it. Focusing on the INA’s use of the phrase “convicted of a[n] aggravated felony,” the Supreme Court reasoned that the “text thus indicates that we are to look to the conviction itself as our starting place.” Carachuri, 130 S.Ct. at 2586. Turning to Carachuri’s 2005 conviction, and noting that it contained “no finding of the fact of his prior drug offense,” the Court held that Carachuri was “not actually convicted” of an offense punishable by a term of imprisonment exceeding one year. Id. at 2586-87 (internal quotation omitted).
In Carachuri the Government also contended, in an argument parallel to that pressed here, that the CSA provision under which Carachuri could have been punished created only one “offense,” and that the existence of a prior conviction was merely a “predicate for an enhanced sentence, not an element of the offense.” Carachuri, Respondent’s Br. at 24. The Government thus argued that Carachuri’s conviction was for an “offense” — drug possession — that was potentially “punishable” by an enhanced sentence, even though the CSA reserved enhanced sentences for recidivists.
The Supreme Court also specifically rejected this argument. It acknowledged that the statutory text of 21 U.S.C. § 844(a) did not “expressly define a separate offense of ‘recidivist simple possession.’ ” Carachuri, 130 S.Ct. at 2581 n. 3. But because “the fact of a prior conviction must still be found ... before a defendant is subject to felony punishment,” the Court viewed § 844(a) as containing a “felony simple possession provision” that is “separate and distinct from the misdemeanor simple possession offense.” Id. Accordingly, the Court held that Carachuri had been convicted only of the “misdemeanor simple possession” offense, for which he could have received a maximum punishment of only one year.
Of course, Carachuri involved use of a predicate conviction for immigration purposes rather than for criminal sentencing. However, in Carachuri the Supreme Court stated that its “[Ijinking” of the “inquiry to the record of conviction comports with how [it] ha[d] categorized convictions” for criminal sentencing purposes. Id. at 2587 n. *243 12.[3] As support for this statement, the Court cited United States v. Rodriquez, 553 U.S. 377, 128 S.Ct. 1783, 170 L.Ed.2d 719 (2008). In Rodriquez, the Court permitted reliance on a recidivist enhancement for the purpose of determining whether a prior state conviction qualified as a predicate for a federal sentencing enhancement under the Armed Career Criminal Act (ACCA). Id. at 393, 128 S.Ct. 1783. But the Court cautioned that when a judgment of conviction, charging document, or plea colloquy “do[es] not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense.” Id. at 389, 128 S.Ct. 1783 (emphasis added). In Carachuri, the Court went even further, explaining that in Rodriquez it had “held that a recidivist finding could set the ‘maximum term of imprisonment,’ but only when the finding is a part of the record of conviction.” 130 S.Ct. at 2587 n. 12 (emphasis added).
B.
With the analysis established in Carachuri and Rodriquez in mind, we turn to the determination of whether Simmons’s 1996 conviction was for an offense “punishable by imprisonment for a term exceeding one year” and so qualifies as a predicate felony conviction for purposes of the CSA.
1.
“[T]he conviction itself’ must serve as our “starting place.” Carachuri, 130 S.Ct. at 2586. Examination -of Simmons’s 1996 state conviction demonstrates that he committed a Class I felony, but as a first-time offender possessed a prior record level of only 1, and thus could not have received a sentence exceeding eight months’ community punishment. N.C. Gen.Stat. § 15A-1340.17(c)-(d).
Because the state sentencing court never made the recidivist finding necessary to expose Simmons to a higher sentence, Carachuri teaches that the Government cannot now rely on such a finding to “set the maximum term of imprisonment.” Carachuri, 130 S.Ct. at 2587 n. 12 (internal quotation marks omitted). Indeed, Simmons’s conviction exemplifies the hypothetical to which the Supreme Court alluded in Rodriquez, ie. a case “in which the records that may properly be consulted do not show that the defendant faced the possibility of a recidivist enhancement.” Rodriquez, 553 U.S. at 389, 128 S.Ct. 1783. In such a situation, the Supreme Court has held that the Government is “precluded from establishing that a conviction was for a qualifying offense” on the basis of such a hypothetical enhancement. Id.; see also Carachuri, 130 S.Ct. at 2587 n. 12 (characterizing this as a holding).
To be sure, in Rodriquez the Court also rejected the argument that “guidelines systems,” which “typically allow a sentencing judge to impose a sentence that exceeds the top of the guidelines range,” serve to “decrease the ‘maximum term’ of imprisonment.” 553 U.S. at 390, 128 S.Ct. *244 1783. On the basis of this observation, the Government argues that Rodriquez forbids us from relying on the Structured Sentencing Act to “decrease the maximum term of imprisonment” Simmons could have served. But the Act does not establish a “guidelines system[ ]”; rather, it mandates specific sentences. See State v. Norris, 360 N.C. 507, 630 S.E.2d 915, 917-18 (2006). Thus, we do not rely on the Act to “decrease” the maximum term of imprisonment Simmons could have served, but rather to establish that maximum term of imprisonment. For, unlike the sort of “guidelines systems” referred to in Rodriquez, no circumstances exist under the Structured Sentencing Act in which a North Carolina judge may “impose a sentence that exceeds the top” of the “range” set forth in the Act. Rodriquez, 553 U.S. at 390, 128 S.Ct. 1783.
Our conclusion that the Act serves as a legislative mandate and not as a “guidelines system[]” accords with that of the other courts of appeal to have considered this question. See United States v. Haltiwanger, 637 F.3d 881 (8th Cir.2011); United States v. Pruitt, 545 F.3d 416 (6th Cir.2008).
In Pruitt, the Sixth Circuit assessed the impact of Rodriquez on North Carolina predicate convictions under ACCA, and it found “no reasonable basis on which to distinguish the North Carolina” Act from “the recidivism enhancement provision at issue in Rodriquez.” Id. at 423. The Pruitt court thus concluded that “it is necessary to consider the defendant’s particular prior record level — and not merely the worst prior record level — in determining whether a conviction was for an offense ‘punishable’ by a term exceeding one year.” Id. at 424. Although in our earlier unpublished opinion in this case we held that Rodriquez did not require rejection of the Harp rule, the Sixth Circuit’s'analysis now seems clearly correct given the Supreme Court’s subsequent ruling in Carachuri. See 130 S.Ct. at 2587 n. 12.
Our determination that Carachuri undermines our previous approach mirrors that made in Haltiwanger. There, the Eighth Circuit analyzed whether a prior conviction for a violation of Kansas law qualified as a “felony drug offense” under 21 U.S.C. § 841(b)(1). 637 F.3d at 882-83. As in North Carolina, the “Kansas sentencing structure ties a particular defendant’s criminal history to the maximum term of imprisonment.” Id. at 884. The Eighth Circuit initially upheld a sentencing enhancement by looking to the “maximum penalty that could be imposed for the same crime on other recidivist offenders,” but the Supreme Court vacated and remanded for reconsideration in light of Carachuri. Id. at 882-83. Upon reconsideration, the Eighth Circuit reversed course and held that “where a maximum term of imprisonment ... is directly tied to recidivism,” the “actual recidivist finding ... must be part of a particular defendant’s record of conviction for the conviction to qualify as a felony.” Id. at 884.
2.
Carachuri also forbids us from considering hypothetical aggravating factors when calculating Simmons’s maximum punishment. We again focus first on Simmons’s “conviction itself,” Carachuri, 130 S.Ct. at 2586, and his conviction makes clear that he was neither charged with nor convicted of an aggravated offense, and that he therefore could not receive a sentence exceeding one year’s imprisonment. As in Carachuri, the “mere possibility that [Simmons’s] conduct, coupled with facts outside the record of conviction, could have authorized” a conviction of a crime punishable by more than one year’s imprisonment cannot and does not demonstrate *245 that Simmons was actually convicted of such a crime.[4] Id. at 2589.
The panoply of procedural protections afforded to offenders facing a potentially aggravated sentence further strengthens this conclusion. As detailed above, an offender can receive an aggravated sentence only if: (1) North Carolina provides him with 30-days’ notice of its intent to prove the necessary aggravating factors, N.C. Gen. Stat. § 15A-1340.16(a6); (2) he admits (or a jury finds) the existence of those factors, id. § 15A-1340.16(al); and (3) the sentencing judge issues written findings justifying such a sentence. Id. § 15A-1340.16(c).
These protections closely resemble the “mandatory notice and process requirements,” contained in 21 U.S.C. § 851, which figured in the Carachuri reasoning. See 130 S.Ct. at 2587-88. There, the Supreme Court concluded that to account for a hypothetical enhancement — of which the Government never provided Carachuri notice — would be to “dismiss these procedures as meaningless.” Id. The same holds true here. North Carolina prosecutors declined to pursue Simmons as an aggravated offender, and we will not second-guess their judgment. See id. at 2588 (noting that the application of a sentencing enhancement “after the fact” based on factors that the State did not allege would “denigrate the independent judgment of state prosecutors”).[5]
rv.
The Government does not dispute that Carachuri held that “a recidivist finding” can “only” “set the ‘maximum term of imprisonment’ ... when the finding is a part of the record of conviction.” Id. at 2587 n. 12. The Government also recognizes, as it must, that the only other appellate courts to have considered the question have held that Supreme Court precedent requires rejection of enhancements similar to the one here. Tellingly, in neither case did the Government seek rehearing en banc. Nonetheless, the Government insists that Harp remains good law and that we should distinguish Carachuri.[6] We find neither of these arguments persuasive.
*246 A.
Contrary to the Government’s contention, Carachuri directly undermines the Harp rationale. In Harp we analyzed a sentencing enhancement that turned on the presence of a prior conviction for a “crime punishable by imprisonment for a term exceeding one year.” Harp, 406 F.3d at 246 (quoting 18 U.S.C. § 922(g)). We held that “ ‘punishable’ is an adjective used to describe ‘crime,’ ” and that “it is more closely linked to the conduct, the crime, than it is to the individual convicted of the conduct.” Id. (internal quotation omitted). Thus, we concluded that a North Carolina conviction is for “a crime punishable by imprisonment for a term exceeding one year” if “any defendant charged with that crime could receive a sentence of more than one year.” Id. (emphasis in original).[7]
This reasoning assumes that an offender’s conduct alone determines the nature of his “crime.” This is of course true for constitutional purposes. See Carachuri, 130 S.Ct. at 2581 n. 3 (noting that the “Constitution does not require treating recidivism as an element of the offense”). But Carachuri rejected this conclusion for purposes of analyzing whether a prior state conviction constitutes a predicate permitting the application of a federal sentencing enhancement. There, the Supreme Court made clear that when a state statute provides a harsher punishment applicable only to recidivists, it creates different “offenses” for the purpose of federal sentencing enhancements. Thus, even though the statute setting forth the predicate offense in Carachuri, 21 U.S.C. § 844(a), proscribed only one type of conduct — “possession of] a controlled substance” — the Court held that it created “separate and distinct” offenses of “misdemeanor simple possession” and “felony simple possession.” Carachuri, 130 S.Ct. at 2581 n. 3. It did so because “the fact of a prior conviction must nevertheless be found ... before a defendant is subject” to punishment exceeding one year’s imprisonment. Id.; see also id. (repeating that “the fact of a prior conviction must still be found before a defendant is subject to felony punishment”).[8]
*247 Rodriquez is consistent with this conclusion. There the Court held that when a “defendant is given a higher sentence under a recidivism statute,” his sentence “is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.” 553 U.S. at 386, 128 S.Ct. 1783 (internal quotation omitted) (emphasis added). In other words, repetition transforms the underlying criminal conduct into an aggravated, different “offense.” A first-time offender does not commit such an aggravated, repetitive “offense”; he therefore cannot be convicted of any offense “punishable” by a term of imprisonment reserved for repeat offenders. In this case, Simmons’s 1996 North Carolina conviction was for only non-aggravated, first-time marijuana possession. Accordingly, his “offense” was not “punishable” by a term of imprisonment exceeding one year, which is reserved for repeat offenders.
B.
Given these facts, Carachuri and Rodriqiiez clearly foreclose reliance on Harp. The Government, while barely mentioning Rodriquez, attempts to distinguish Carachuri on three grounds. We address each in turn.
1.
First, the Government claims that, unlike the statute at issue in Carachuri, the North Carolina Structured Sentencing Act “does not ... define separate recidivist offenses.” Appellee’s Br. at 7. This is assertedly so because the Act creates eighteen sentencing ranges for each felony class. The Government argues that the Act therefore fails to create separate offenses because it recognizes “gradations of recidivism,” while the statute in Carachuri differentiated between offenses based “solely on the fact of recidivism.” Id. at 8 (emphasis added).
The Government’s argument rests on a false premise. Contrary to the Government’s contention, the statute in Carachuri did not create distinctions based “solely on the fact of recidivism”; rather, it provided three sentences corresponding to three different gradations of recidivism. See 21 U.S.C. § 844(a) (providing a maximum of one year’s imprisonment if a defendant is a first-time offender, two years’ imprisonment if a defendant has a “prior conviction,” and three years’ imprisonment if he has “two or more prior convictions”). Perhaps because of this, nothing in Carachuri offers any support for the Government’s “gradations” argument. The Supreme Court there inferred “separate and distinct” offenses because “recidivist ... possession” (in reality the intermediate punishment provided by the statute) required proof of “the fact of a prior conviction.” 130 S.Ct. at 2581 n. 3. The same is true here. Like the statute at issue in Carachuri, the North Carolina Structured Sentencing Act metes out harsher punishment only when the prosecution proves “the fact” of a defendant’s prior convictions. Thus, when used as a predicate for federal sentencing purposes, the Act creates separate offenses that in turn yield separate maximum punishments.[9]
*248 2.
Second, the Government suggests that the Carachuri holding does not apply here because the state predicate for which Simmons was convicted was a “Class I felony,” while the state predicate for which Carachuri was convicted was not a “recidivist offense.” Appellee’s Br. at 9. This argument too rests on a false premise; it assumes that the “Class I felony” for which Simmons was convicted constitutes the sort of “recidivist offense” that Carachuri avoided. But as explained above, Simmons’s “Class I felony” does not qualify as a “recidivist offense,” because Simmons’s record of conviction — like Carachuri’s— lacked the finding necessary to expose him to a recidivist sentence. Accordingly, the North Carolina Structured Sentencing Act restricted Simmons’s maximum sentence to eight months’ community punishment, in the same way that § 844(a) restricted Carachuri’s maximum sentence to one year.
Of course, the analysis in Carachuri was more complicated than that here. The question of whether Carachuri’s predicate offense qualified as an “aggravated felony” under the INA turned on whether the “ ‘proscribed conduct’ of [his] state offense” was “punishable as a felony under ... federal law.” Carachuri, 130 S.Ct. at 2588 (quoting Lopez v. Gonzales, 549 U.S. 47, 60, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006)). In other words, the INA required resort to a hypothetical — an assessment of whether Carachuri, by committing a state crime, had committed a “fictional federal felony.” [10] Id. But the Government went further, asking the Court to consider whether state prosecutors could have charged Carachuri with conduct that in turn could have corresponded to such a fictional federal crime; the Government’s argument therefore relied on a “hypothetical to a hypothetical.” Id. (internal quotation marks omitted).
The inquiry here is simpler, because 21 U.S.C. § 841(b)(1)(B) does not require comparison of Simmons’s state offense to a fictional federal crime. That simplicity, however, does not render the Carachuri holding inapplicable here. The Supreme Court’s rejection of the Government’s argument in Carachuri had nothing to do with the number of hypothetical in the analysis; after all, established precedent required resort to the initial hypothetical in determining whether a state offense was “punishable” as a federal felony. See Lopez, 549 U.S. at 55-56, 127 S.Ct. 625. In Carachuri the Court simply took issue with the specific character of the Government’s second hypothetical — the consideration of “facts not at issue in the crime of conviction ... to determine whether Carachuri-Rosendo could have been charged with a federal felony.” Carachuri, 130 S.Ct. at 2588 (emphasis omitted). Such reliance on “facts not at issue in the *249 crime of conviction” runs afoul of Carachuri, regardless of how many hypothetical pervade the overall inquiry. Accordingly, because no findings of recidivism or aggravation appear in Simmons’s state record of conviction, those enhancements may not be considered in determining whether Simmons’s offense constitutes a “felony drug offense” under the CSA.
3.
Third, the Government insists that Simmons’s prior conviction, unlike Carachuri’s, was for “conduct that one would expect would be ‘punishable’ by more than one year in prison.” Appellee’s Br. at 10. But the Government has provided no evidence in support of the assertion that “one would expect” Simmons’s first-time possession of less than ten pounds of marijuana to trigger a sentence of imprisonment exceeding one year. After all, North Carolina judged Simmons’s crime worthy of no imprisonment — making it in one sense even less serious than Carachuri’s crime. See Carachuri, 130 S.Ct. at 2580 (noting that Carachuri received prison time). Surely well-established federalism principles do not permit a federal court to reject North Carolina’s judgment as to the seriousness of a North Carolina crime, prosecuted in a North Carolina court and adjudicated by a North Carolina judge, merely because the federal court might “expect” a more serious punishment.
Indeed, it is the Government’s approach — requiring a federal court to calculate an offender’s maximum punishment by interpreting a prior state offense in a manner outlawed by the state — that invites results that are, as in Carachuri, “counter-intuitive and unorthodox.” Carachuri, 130 S.Ct. at 2585 (internal quotation omitted). For example, the Government’s approach would dictate that a federal court treat a pharmacist’s first-time failure to check a minor’s identification before selling Sudafed — a misdemeanor for which a North Carolina offender faces a maximum of only 45 days’ community punishment, see N.C. Gen.Stat. §§ 90-113.52(c), 90-113.56(b), 15A-1340.23(e) — as a predicate offense “punishable” by nearly two decades of imprisonment. See id. §§ 90-113.56(b) (providing that a third-time offender commits a Class I felony), 14-7.1 & 14-7.6 (permitting a “habitual felon” convicted for a Class I felony to be punished as a Class C felon), 15A-1340.17(c), (e) (fixing the maximum punishment for an aggravated and recidivist Class C felony at 228 months’ imprisonment).
Or to take another example: under the North Carolina Structured Sentencing Act, a daycare provider who willfully administers any over-the-counter medication to a child, without written parental authorization, commits a Class A1 misdemeanor for which a first-time offender faces a maximum sentence of sixty days’ imprisonment. Id. §§ 110-102.1A(a), (d), 15A-1340.23. Yet the Government’s approach — requiring calculation of an offense’s maximum term of imprisonment by reference to an imagined worst-case offender — would require a federal court to consider this daycare provider as having committed an offense “punishable” by 228 months’ imprisonment. Id. §§ 14-50.22 (converting any Class A1 misdemeanor into a Class I felony if performed “in association with[ ] any criminal street gang”), 14-7.1, 14-7.6 (converting Class I felony committed by a “habitual felon” into Class C felony), 15A-1340.17(c), (e).
Such an approach — requiring federal courts to treat even minor state crimes as serious felonies — makes a mockery of North Carolina’s carefully crafted sentencing scheme. It also disregards the rationale of Carachuri, which emphasized that federal courts should not apply hypotheti *250 cal sentencing enhancements “after the fact” in a manner that would “denigrate the independent judgment of state prosecutors to execute the laws” of their states. 130 S.Ct. at 2588. No less than the Texas prosecutors in Carachuri, the North Carolina legislature deserves our deference here. And that legislature has chosen to adopt a strictly regimented sentencing scheme that requires sentencing judges to “effectively tailor[] the statutory maximum punishment available to each individual defendant.” Pruitt, 545 F.3d at 420. We cannot upend this scheme by lumping all defendants — and virtually all crimes— into the same category for the purposes of federal sentencing.
V.
For the foregoing reasons, we vacate Simmons’s sentence and remand for proceedings consistent with this opinion.[11]

VACATED AND REMANDED.

. The district court imposed concurrent 120-month sentences for each of the three counts. Two of the three counts charged Simmons with possession with intent to distribute under 50 kilograms of marijuana, for which the CSA establishes statutory máximums of ten years for recidivist possession and five years for first-time possession. 21 U.S.C. § 841(b)(1)(D). Simmons thus received the statutory maximum for these two counts. The remaining count charged Simmons with conspiracy to distribute at least 100 kilograms of marijuana, which triggered the 10-year statutory minimum required by 21 U.S.C. § 841(b)(1)(B). Therefore, our holding that Simmons possesses no "prior conviction for a felony drug offense” fixes his maximum sentence for the two lesser counts at five years, and it reduces to five years the minimum sentence for the remaining count.

. In rare cases in which a judge finds the presence of "extraordinary mitigating factors," he may impose a lesser sentence. N.C. Gen.Stat. § 15A-1340.13(g). But a judge possesses no discretion to impose a more severe sentence even in extraordinary cases.

. Thus, the Carachuri Court itself rejected the Government’s suggestion in this case, adopted by Judge Duncan in dissent, that the Carachuri analysis. applies only in the deportation context. Moreover, the ultimate question facing the Court in Carachuri was whether Carachuri's conduct was "punishable” as a felony under the CSA — the same statute that is at issue here. See Carachuri, 130 S.Ct. at 2582. That Carachuri analyzed the CSA in the "deportation context” renders its holding no less binding in the “criminal context,” because, as the Supreme Court has explained, courts "must interpret the statute consistently” across both contexts. Leocal v. Ashcroft, 543 U.S. 1, 11 n. 8, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004).

. We recognize that this conclusion is at odds with that of the Sixth Circuit, which upheld, over Judge Merritt’s dissent, resort to the aggravated range in calculating an offense's maximum punishment. See Pruitt, 545 F.3d at 421-22; id. at 426-30 (Merritt, J., dissenting). This holding in Pruitt, however, preceded Carachuri, in which the Supreme Court expressly directed courts not to take into account potential facts "outside of the record of conviction.” Carachuri, 130 S.Ct. at 2589.

. We note that § 851 (the federal procedural statute analyzed in Carachuri) and the North Carolina Act differ in some respects. On one hand, § 851, unlike the Act, requires a prosecutor to "file[ ] an information with the court” specifying the basis for the enhancement. Compare 21 U.S.C. § 851(a)(1) with N.C.G.S. § 15A-1340.16(a4). On the other hand, the Act contains two protections that § 851 lacks: a jury's finding (or an admission) of aggravating factors and written judicial findings justifying imposition of an aggravated sentence. See id. § 15A-1340.16(al), (c). Notwithstanding these differences, § 851 and the Act function identically in providing the elements crucial to the Carachuri Court’s analysis: both provide the defendant "notice of the Government’s intent,” and both "authorize prosecutors to exercise discretion when electing whether to pursue [an] ... enhancement.” Carachuri, 130 S.Ct. at 2587-88.

.In a Rule,28(j) letter, the Government contends that McNeill v. United States, - U.S. -, 131 S.Ct. 2218, 180 L.Ed.2d 35 (2011), supports its position. McNeill held that a defendant’s predicate North Carolina drug offenses, for which he had received 10-year sentences, qualified under ACCA as offenses carrying a maximum term of imprisonment of ten years, even though those state offenses did not carry a 10-year maximum at the time of his federal conviction. Nothing in McNeill undermines our holding here, for crucial to *246 the McNeill holding was the fact that "North Carolina courts actually sentenced [McNeill] to ten years in prison.” Id. at 2222. In contrast, no North Carolina court "actually sentenced” Simmons to any imprisonment. Moreover, because McNeill's predicate convictions occurred before the Act's enactment, the Court held that the Act did not even apply to those convictions. Id. at 2224. Thus, as the Government concedes, the issue of how to calculate the maximum punishment of an offense under the Act was "not before the Court” in McNeill.

. The principal dissent maintains that, had Congress intended our reading of the statute, it could have defined a "felony drug offense” as an "offense for which the defendant is punished by imprisonment for a term exceeding one year.” Certainly, Congress could have been clearer. However, that argument cuts both ways; if Congress had intended the dissent's reading, it could have written the statute in terms of "an offense for which any defendant could be subject to punishment for more than one year.”

. The principal dissent asserts that it too "looks only at the fact of Simmons’ prior conviction.” This contention totally misreads Carachuri. By "prior conviction," the Carachuri Court was referring to a conviction, imposed prior to a predicate conviction, which transformed a predicate conviction for "simple” possession into one for "recidivist” possession. 130 S.Ct. at 2581 n. 3. By contrast,' the "prior conviction” to which the dissent "looks” is merely Simmons's predicate conviction itself. The dissent completely ignores the fact that Simmons — at the time of that predicate conviction in 1996 — lacked the sort of "prior conviction” that would have converted the 1996 offense of conviction into a recidivist crime. It is only by overlooking this absence of a "prior conviction,” i.e. a conviction prior to the 1996 predicate convic *247 tion, that the dissent can conclude that Simmons's predicate conviction was for an "offense” punishable by a sentence reserved for recidivist possession.

. Contrary to the suggestion of the principal dissent, our holding establishes no "unworkable rule.” Rather, it requires examination of three pieces of evidence: the offense class, the offender’s prior record level, and the applicability of the aggravated sentencing range. All three appear prominently on the first page of an offender’s state record of conviction. See N.C. Forms AOC-CR-601, AOC-CR-603. *248 From this, it is a simple matter to refer to the statutory table provided by the Structured Sentencing Act and compute the applicable maximum punishment.

. The principal dissent errs in asserting that this "state-to-federal offense 'extrapolation' analysis” explains the Court's "look at the specific characteristics of Carachuri's conduct.” Rather, this "extrapolation analysis” required only that the Court assess whether Carachuri’s "state offense ... proscribed] conduct punishable as a felony under federal law.” Lopez, 549 U.S. at 60, 127 S.Ct. 625 (emphasis added). Thus, what the dissent characterizes as the "Lopez analysis” focuses on the predicate offense, not on the "specific characteristics” of the defendant's conduct. The Carachuri Court looked to those "specific characteristics” because it had to determine the nature of Carachuri’s predicate "offense.” In doing so, the Court concluded that Carachuri's predicate offense (like Simmons’s here) was simple, not recidivist, drug possession. See Carachuri, 130 S.Ct. at 2581 n. 3.

. Before the original panel, Simmons also argued that the district court erred in "failing to provide a hearing” so that he "could establish that counsel in his 1996 conviction provided ineffective assistance.” Simmons, 340 Fed.Appx. at 144-45. The panel properly rejected this argument. The CSA establishes a strict five-year statute of limitations governing challenges to prior convictions, see 21 U.S.C. § 851(e), and Simmons first raised this argument over a decade after his 1996 conviction.