**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-5016**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

      v.

BRIAN KEITH LUCAS,

               Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington.  James C. Fox, Senior
District Judge.  (5:09-cr-00158-F-5)

Submitted:  June 15, 2012          Decided:  June 29, 2012

Before TRAXLER, Chief Judge, and NIEMEYER and KING, Circuit
Judges.

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

Jorgelina E. Araneda, Raleigh, North Carolina, for Appellant.
Thomas G. Walker, United States Attorney, Jennifer P. May-
Parker, Assistant United States Attorney, Kristine L. Fritz,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Brian Keith Lucas was convicted and sentenced for his participation in an armed bank robbery. On appeal, he contests his competency to stand trial and challenges three aspects of his sentence. For the reasons that follow, we affirm Lucas's conviction, vacate his sentence, and remand for resentencing in light of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc).

I.

A.[*]

Trial testimony established that prior to December 12, 2008, Appellant Lucas, along with Marcus Wiley, Anthony Atkinson, and Jerry Barnes, met on several occasions to discuss plans to rob a Branch Banking and Trust Company ("BB&T") in Elm City, North Carolina. According to the plan, Barnes would serve as a lookout while Lucas, Wiley, and Atkinson entered the bank.

On the morning of December 12, 2008, Lucas, Wiley, Atkinson, and Barnes drove to the bank to scout the general area for law enforcement personnel. At some point during this

---

[*] In a case arising from these same general facts, we recently affirmed the conviction and sentence of one of Lucas's co-conspirators. See United States v. Barnes, No. 10-4545, 2012 WL 1655377 (4th Cir. May 11, 2012).

morning ride-around, the group approached Matthew Farr at a Short Stop convenience store. Although everyone in the vehicle spoke to Farr, Farr testified that Lucas specifically requested his help, saying "they needed a car." J.A. 195. Farr agreed to help and testified that Lucas later instructed him on where to park his vehicle and wait while they were robbing the bank.

Later that morning, Lucas, Wiley, and Atkinson met up with Vernon Atkinson ("BJ"), a co-conspirator who had previously agreed to drive them to and from the bank. BJ drove Lucas, Wiley, and Atkinson toward the BB&T, dropped them off on a street right behind the bank, and waited in his vehicle for their return. Barnes drove separately and parked his vehicle in front of a pharmacy that was located directly across the street from the BB&T. The location of Barnes's vehicle prevented anyone in the drug store from seeing people entering or exiting the bank.

Lucas, Wiley, and Atkinson entered the bank wearing masks and gloves. Lucas entered first, yelling "Get down! Get down on the ground!" J.A. 419. He proceeded to the desk of the bank's relationship banker and assaulted her, pushing her to the ground, "mashing" her face into the cement floor, and yelling, "I know who you are! I know your children! I know where you live!" J.A. 419. He then dragged her down the hall and, while she prayed out loud, screamed at her to "Shut up!" J.A. 419.

3

Meanwhile, Wiley and Atkinson approached the tellers. Lucas had previously instructed Wiley to go behind the counter when he entered the bank, and Wiley complied with this instruction. Atkinson threatened the tellers with a .380 caliber revolver while Wiley gathered together over $28,000.

The three men then left the bank and ran to BJ's car. BJ drove them to Farr's car, which was parked a few blocks away according to Lucas's instructions, and Lucas, Wiley, and Atkinson got out of BJ's car and into Farr's car. Farr testified that Lucas then instructed him to drive to Sleepy Hollow, a pond outside of Elm City, and explained how to get there. Farr further testified that once at Sleepy Hollow, Lucas gave him $1,000 of the money stolen from the bank for his assistance.

## B.

Lucas was indicted for conspiracy to commit armed bank robbery, see 18 U.S.C. § 371 ("Count 1"); committing (or aiding and abetting) armed bank robbery, see 18 U.S.C. § 2113(a), (d); id. § 2 ("Count 2"); and aiding and abetting the use and carrying of a firearm during a crime of violence, see 18 U.S.C. § 924(c)(1)(A)(ii); id. § 2 ("Count 3"). On July 2, 2009, Lucas executed a written plea agreement calling for him to plead guilty to Counts 2 and 3 of the indictment.

4

Approximately two months later but prior to his arraignment, counsel for Lucas filed a Motion to Determine Mental Competency, pursuant to 18 U.S.C. § 4241. The district court allowed the motion and ordered Lucas to undergo a psychological or psychiatric examination. The evaluating psychologist found that Lucas was malingering and concluded that he was competent to stand trial. Despite these findings, several months later, counsel for Lucas moved the court for a second mental health evaluation based on alleged deteriorating conditions. The court ordered the evaluation, and the psychologist again concluded that Lucas was competent to stand trial.

During Lucas's arraignment on April 12, 2010, the district court asked Lucas if he wished to plead guilty consistent with the plea agreement, but Lucas did not respond. Consequently, the court refused to accept his plea agreement, and the case went to trial, where a jury convicted Lucas of all three counts in the indictment. At sentencing, the district court found that Lucas qualified as a career offender under U.S.S.G. § 4B1.1 (2009). After applying a sentence enhancement for Lucas's managerial role in the conspiracy, the district court imposed a sentence of 480 months' imprisonment.

II.

On appeal, Lucas contests his competency to stand trial and challenges three aspects of his sentence. We begin by addressing Lucas's competency challenge.

A.

Lucas argues that the district court erred in proceeding to trial because Lucas was allegedly incompetent to do so. We construe this claim as a challenge to the district court's factual finding of competency, which we review for clear error. See United States v. Robinson, 404 F.3d 850, 856 (4th Cir. 2005). "[T]he defendant has the burden, 'by a preponderance of the evidence [to show] that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" Id. (second alteration in original) (quoting 18 U.S.C. § 4241(d)).

The district court relied on two psychological evaluations that found Lucas competent to stand trial. See United States v. Mason, 52 F.3d 1286, 1290 (4th Cir. 1995) ("Medical opinions are usually persuasive evidence on the question of whether a sufficient doubt exists as to the defendant's competence." (internal quotation marks omitted)).

6

Apart from explaining that his interactions with Lucas conflict with the psychological reports, counsel for Lucas presented no evidence to the contrary. Thus, the district court did not clearly err in finding Lucas competent to stand trial.

## B.

Lucas also challenges three aspects of his sentence. His first claim is that the district court erred in denying him a sentence reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Lucas, however, refused to plead guilty, proceeded to trial, and put the government to its burden of proof as to the essential factual elements of guilt. Thus, the district court did not clearly err in denying Lucas a sentence reduction for acceptance of responsibility. See United States v. Hargrove, 478 F.3d 195, 198 (4th Cir. 2007).

Lucas next challenges the district court's application of a three-level sentence enhancement for his role as a "manager or supervisor" in the conspiracy, pursuant to U.S.S.G. § 3B1.1(b). Testimony at trial, however, revealed that Lucas was involved in planning the robbery, helped recruit Farr, paid Farr for his assistance, and directed the activities of Farr and Wiley. Therefore, the district court did not clearly err in applying this aggravating role enhancement. See United States v. Kellam, 568 F.3d 125, 147-48 (4th Cir. 2009).

Finally, Lucas argues that the district court improperly characterized him as a career offender under § 4B1.1(a) of the Sentencing Guidelines. "We review de novo a question concerning whether a prior state conviction qualifies as a prior felony conviction under the career offender provision." United States v. Jones, 667 F.3d 477, 482 (4th Cir. 2012).

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense . . . is a felony that is . . . a crime of violence . . .; and (3) the defendant has at least two prior felony convictions of . . . a crime of violence . . . .

U.S.S.G. § 4B1.1(a). To qualify as a "crime of violence" for the purposes of § 4B1.1(a), an offense must be "punishable by imprisonment for a term exceeding one year." Id. § 4B1.2(a).

The presentence report categorized two prior North Carolina offenses as predicate offenses for the career offender guideline: a 2003 conviction for common law robbery and a 2004 conviction for larceny from the person. Lucas received a suspended 13-16 month sentence for the 2003 offense and an 8-10 month sentence for the 2004 offense. Lucas contends that the 2004 offense, for which he received an 8-10 month sentence, cannot serve as a predicate offense.

At the time of sentencing, the rule in this Circuit was that "a prior North Carolina conviction was for a crime

punishable by imprisonment for a term exceeding one year, if any defendant charged with that crime could receive a sentence of more than one year." United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005) (internal citation and quotation marks omitted). After sentencing in this case, however, we overruled Harp and held that under North Carolina's structured sentencing scheme, an offense is punishable for a term exceeding one year only if the particular defendant before the court could have received such a sentence based on his criminal history and the nature of his offenses. See Simmons, 649 F.3d at 241-45. Therefore, in light of Simmons, we vacate Lucas's sentence and remand for resentencing.

III.

For the foregoing reasons, we affirm Lucas's conviction, vacate his sentence, and remand for resentencing consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

9