**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4775**

_____

UNITED STATES OF AMERICA,

　　　　　　Plaintiff – Appellee,

　　　v.

NORMAN ALAN KERR,

　　　　　　Defendant – Appellant.

_____

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro. N. Carlton Tilley,
Jr., Senior District Judge. (1:09-cr-00290-NCT-1)

_____

Argued: September 19, 2013　　　　Decided: December 3, 2013

_____

Before AGEE, DAVIS, and DIAZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Diaz wrote the majority
opinion, in which Judge Agee joined. Judge Davis wrote a
dissenting opinion.

_____

**ARGUED:** George Entwistle Crump, III, Rockingham, North Carolina,
for Appellant. Ripley Eagles Rand, OFFICE OF THE UNITED STATES
ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:**
Robert A. J. Lang, Assistant United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina; Tammy
Chen Hsu, Second Year Law Student, WAKE FOREST UNIVERSITY SCHOOL
OF LAW, Winston-Salem, North Carolina, for Appellee.

_____

DIAZ, Circuit Judge:

A jury convicted Norman Alan Kerr of possession of a firearm after being previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). The district court determined that Kerr qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C § 924(e), and sentenced him to 268 months' imprisonment.

Kerr raises three issues in this appeal. First, he contends that his prior North Carolina state convictions do not qualify as predicate felonies for sentencing under the ACCA because he was sentenced in the mitigated range--as opposed to the presumptive range--of punishment under North Carolina's Structured Sentencing Act. Second, he argues that the same reasoning precludes his § 922(g)(1) conviction, which similarly requires a predicate felony offense. Finally, Kerr asserts that his counsel in his initial appeal rendered ineffective assistance by failing to challenge his conviction on the basis that he lacked a predicate felony. We disagree with Kerr's first two arguments and find that the third one is moot. We therefore affirm the district court's judgment.

Kerr was charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e). The indictment alleged that, for the purposes of the ACCA, Kerr had previously been convicted of three violent felonies or serious drug offenses punishable by imprisonment for a term greater than one year. The record establishes that Kerr had three 2008 North Carolina state convictions for felony breaking and entering.[1]

Following a jury trial, Kerr was convicted of possession of a firearm by a convicted felon. At his sentencing hearing, Kerr objected to his designation as an armed career criminal under § 924(e), which required that Kerr have a combination of three convictions for violent felonies or serious drug offenses. The district court overruled the objection, relying on then-binding precedent that a North Carolina state conviction constitutes a crime punishable by a term of imprisonment exceeding one year "if any defendant charged with that crime could receive a sentence of more than one year," United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005), overruled by United States v. Simmons,

---

[1] The indictment also alleges that Kerr had been convicted of other crimes that were punishable by imprisonment for a term exceeding one year. The government concedes, and we agree, that Kerr could not have received a sentence in excess of one year for those offenses.

3

649 F.3d 237 (4th Cir. 2011) (en banc). As a result, the court sentenced Kerr under the ACCA to 268 months' imprisonment.

Kerr appealed, arguing that the district court erred in denying his motion to substitute counsel and in sentencing him under the ACCA. We placed the appeal in abeyance pending our decision on rehearing in Simmons. Our en banc opinion in Simmons overruled Harp and held that a North Carolina conviction is a crime punishable by a term of imprisonment exceeding one year only if the particular defendant is eligible for such a sentence, taking into account his criminal history and the nature of his offense. See 649 F.3d at 247 & n.9.

We subsequently affirmed the district court's denial of Kerr's motion to substitute counsel and vacated Kerr's sentence because Harp was no longer good law. With respect to sentencing, we expressed no opinion regarding whether Kerr's prior state convictions qualified as predicate felonies.

On remand, Kerr's counsel filed a motion asking the court to vacate Kerr's conviction and dismiss the indictment. Prior to resentencing, the probation officer prepared a supplement to the original presentence investigation report, concluding that Kerr's 2008 state breaking and entering convictions were each punishable by a presumptive maximum sentence of 14 months' imprisonment and thus qualified as ACCA predicates. The district court denied counsel's motion to vacate and dismiss.

4

Agreeing that the prior breaking and entering convictions qualified as ACCA-predicate crimes, the court again sentenced Kerr to 268 months' imprisonment. This appeal followed.

## II.

### A.

We review de novo the question of whether a prior state conviction is a predicate felony for the purposes of federal criminal law. See United States v. Jones, 667 F.3d 477, 482 (4th Cir. 2012). In order for a defendant to be sentenced as an armed career criminal on a felon-in-possession conviction, the defendant must have a combination of three convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e). A violent felony is a crime of violence punishable by a term exceeding one year of imprisonment. 18 U.S.C. § 924(e)(2)(B).

### B.

To properly analyze Kerr's arguments, we must first review his 2008 state convictions under the sentencing regime mandated by North Carolina's statutory framework.

North Carolina's Structured Sentencing Act directs a judge to impose felony sentences based on two criteria: the designated offense class and the offender's prior record level. N.C. Gen. Stat. § 15A-1340.13(b). The Act, or in certain cases a different statute, sets forth the offense class. Id. § 15A-

5

1340.17(a). The sentencing judge calculates the offender's prior record level by adding the points assigned to each of the offender's prior convictions. Id. § 15A-1340.14(a)-(b).

Next, the judge matches the offense class and prior record level using a statutory table, which provides three sentencing ranges--a mitigated range, a presumptive range, and an aggravated range. Id. § 15A-1340.17(c). As a default, the judge sentences the defendant within the presumptive range. The judge may deviate from the presumptive range, however, if the judge makes written findings of aggravating or mitigating factors established by the Act, finds that aggravating factors outweigh mitigating factors (or vice versa), and chooses to depart from the presumptive range.[2] Id. §§ 15A-1340.13(e), 15A-1340.16(b), (c).

After identifying the applicable sentencing range, the judge must select the defendant's minimum sentence from within

---

[2] With respect to the aggravated sentencing range, a judge may depart only if the state has provided the defendant with written notice of its intent to prove the necessary aggravating factors at least 30 days before the trial or entry of a plea. Id. § 15A-1340.16(a6). Moreover, with two exceptions, a jury must have found aggravating factors exist beyond a reasonable doubt or the defendant must have pleaded to the existence of those factors. See id. §§ 15A-1340.16(a)-(a1), (b). With respect to the mitigated sentencing range, the defendant bears the burden of proving any mitigating factors by a preponderance of the evidence. Id. § 15A-1340.16(a).

that range.[3]  Id. § 15A-1340.17(c).  Once the judge selects the minimum sentence, separate statutory charts provide the corresponding maximum sentence.  Id. § 15A-1340.17(d)-(e).

## C.

We turn now to Kerr's three 2008 breaking and entering convictions, which constituted Class H felonies.  At the time of sentencing for those state convictions, Kerr had a prior record level of IV.  Pursuant to the statutory charts, he thus faced a presumptive minimum term of 9 to 11 months' imprisonment and a corresponding presumptive maximum sentence of 14 months' imprisonment.[4]

The state sentencing judge found, however, that the factors in mitigation outweighed those in aggravation and that a mitigated sentence was justified.  The judge then exercised her discretion to depart from the presumptive range and sentenced Kerr in the mitigated range.  The mitigated range included a possible maximum sentence of 11 months' imprisonment.

---

[3]  In rare cases where the judge finds "extraordinary mitigating factors," the judge may impose a lesser sentence. Id. § 15A-1340.13(g).  The judge does not have discretion to impose a more severe sentence, however, even in extraordinary cases.  Simmons, 649 F.3d at 240 n.2.

[4] After Kerr was sentenced for the three 2008 breaking and entering convictions, the Act's statutory charts were amended to increase the maximum sentences.  See Justice Reinvestment Act of 2011, 2011 N.C. Sess. Laws 192 §§ 2(e)-(f).

Ultimately, the judge sentenced Kerr to 8 to 10 months' imprisonment.

### III.

### A.

Kerr contends that because the state court judge chose to sentence him in the mitigated range, he could not have been sentenced to a term of imprisonment for greater than one year for any of his three 2008 breaking and entering convictions.[5] As a result, Kerr contends that he lacks the requisite predicate felonies for sentencing as an armed career criminal under this court's reasoning in Simmons.

Simmons did not, however, decide the precise issue before us. Rather, we considered there whether a prior North Carolina state conviction for marijuana possession, for which the defendant faced no possibility of imprisonment, constituted an offense punishable by imprisonment for more than one year, thereby triggering a sentencing enhancement under the Controlled Substances Act. Simmons, 649 F.3d at 239. A panel of this court originally affirmed Simmons's sentence in an unpublished disposition, but the Supreme Court vacated that judgment and

---

[5] Kerr does not contest that these convictions were for crimes of violence.

8

remanded the case for further consideration in light of Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010). Simmons, 649 F.3d at 239.

In Carachuri-Rosendo, the question presented was whether a lawful permanent resident of the United States was barred from seeking cancellation of removal under the Immigration and Nationality Act (the "INA") because he had previously been convicted of an aggravated felony. 130 S. Ct. at 2580. As the Court explained, the INA defined an "aggravated felony" to include any crime "punishable as a federal felony" under the Controlled Substances Act--i.e., a crime for which the "maximum term of imprisonment authorized" exceeds one year. Id. at 2581 (internal quotation marks omitted).

Carachuri-Rosendo had previously been convicted of two misdemeanor drug possession offenses in Texas. Id. at 2580. The government argued nonetheless that Carachuri-Rosendo had been convicted of an aggravated felony because he hypothetically could have received a two-year sentence for his second misdemeanor offense if he had been prosecuted in federal court. Id. at 2582. This was true because a defendant may receive a two-year maximum sentence under federal law for possession of narcotics if the defendant has a prior drug conviction. Id. at 2581.

9

The Court, however, rejected this hypothetical approach, reasoning that the statutory text "indicates that we are to look to the conviction itself as our starting place, not to what might have or could have been charged." Id. at 2586. Examining Carachuri-Rosendo's second state conviction, the Court noted that he was convicted of a misdemeanor simple drug possession offense without any finding of recidivism. Id. The maximum prison sentence authorized for such a conviction was one year. Id. at 2581 n.4. Therefore, the Court held that the petitioner was "not actually convicted" of an offense punishable by a term of imprisonment exceeding one year. Id. at 2586-87 (internal quotation marks omitted).

We subsequently determined that Carachuri-Rosendo required us to vacate Simmons's sentence. In reaching this conclusion, we explained that Carachuri-Rosendo directly undermined our earlier decision in Harp. Simmons, 649 F.3d at 246. Specifically, we determined that in deciding whether a sentencing enhancement was appropriate under the Controlled Substances Act, a district court could no longer look to a hypothetical defendant with the worst possible criminal history. Instead, we held that a sentencing court may only consider the maximum possible sentence that the particular defendant could have received. See id. at 247 & n.9. Conducting that analysis, we explained, "requires examination of three pieces of evidence:

10

the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range." Id. at 247 n.9.

Applying that analysis, we first found that Simmons was convicted of a Class I felony and had a prior record level of I. Id. at 240-41. We explained that

> [u]nder the Act, a Class I felony is punishable by a sentence exceeding twelve months' imprisonment only if the State satisfies two conditions. First, the State must prove (or the defendant must plead to) the existence of aggravating factors sufficient to warrant the imposition of an aggravated sentence. Second, the State must demonstrate that the defendant possesses fourteen or more criminal history points, resulting in a "prior record level" of at least 5. If the State fails to satisfy either of these conditions, a Class I offender can never receive more than one year's imprisonment.

Id. (internal citations omitted). Because the State satisfied neither condition, id. at 241, we held that Simmons's prior North Carolina conviction could not be used to enhance his federal sentence, see id. at 244.

Following our decision in Simmons, we have rejected defendants' arguments that they lack the requisite predicate felonies because the actual sentence they received under North Carolina law was less than a year of imprisonment. See, e.g., United States v. Edmonds, 679 F.3d 169, 176 (4th Cir.), vacated on other grounds, 133 S. Ct. 376 (2012); United States v. Leach, 446 F. App'x 625, 626 (4th Cir. 2011) (unpublished). In

11

Edmonds, for example, the defendant argued that he lacked a predicate felony offense because he actually received a sentence of 9 to 11 months' imprisonment.[6] 679 F.3d at 176. Edmonds had a prior record level of IV, the offense was a Class H felony, and there was no showing of aggravating factors. Id. Under the Structured Sentencing Act, he faced a maximum presumptive sentence of 14 months' imprisonment. Id.

We concluded that Edmonds had a qualifying predicate felony because he "could have received" a sentence greater than one year. Id. at 176-77. We reached the same result in Leach. See 446 F. App'x at 626 ("[W]hile Leach was only sentenced to nine-to-eleven months, his offense was punishable by more than twelve months, as the state court had the discretion to sentence Leach to a maximum sentence of eleven-to-fourteen months imprisonment without any further factual or legal findings."). In both cases, the defendant was exposed to a sentence in excess of one year even though he actually received a sentence of less than one year. The maximum sentence the particular defendant faced--not the sentence actually imposed--controlled whether the defendant had a qualifying predicate felony.

---

[6] Edmonds conceded that one of his prior convictions at issue was a qualifying predicate felony. 679 F.3d at 176.

12

B.

Kerr's appeal presents an issue that neither <u>Simmons</u> nor its progeny expressly address:  Must a district court, in determining whether a defendant has the requisite predicate felonies for sentencing as an armed career criminal, consider the fact that the defendant received a mitigated sentence of less than one year in prison under North Carolina law for those felonies?  To answer this question, we return to the Structured Sentencing Act.

As explained above, North Carolina law establishes three sentencing ranges based on the appropriate offense class and prior record level.  N.C. Gen. Stat. § 15A-1340.17(c).  The presumptive sentencing range is the default.  The sentencing judge <u>may</u> deviate from the presumptive range if the judge makes written findings of aggravating or mitigating factors, finds that aggravating factors outweigh mitigating factors (or vice versa), and chooses to depart.  <u>Id.</u> §§ 15A-1340.13(e), 15A-1340.16(b), (c); <u>see also</u> <u>Simmons</u>, 649 F.3d at 240.  But North Carolina law also provides that a judge may sentence a defendant in the presumptive range even if the judge finds that mitigating factors outweigh those in aggravation.  <u>State v. Bivens</u>, 573 S.E.2d 259, 261-62 (N.C. Ct. App. 2002).

The state court judge who sentenced Kerr found that the relevant mitigating factors outweighed those in aggravation and

13

then chose to exercise her discretion by sentencing Kerr to a mitigated range sentence of 8 to 10 months' imprisonment for his crimes.  But just as in Edmonds, the judge remained free at all times to sentence Kerr to a presumptive prison term of up to 14 months.

We have great respect for our distinguished colleague in dissent.  But in focusing--we think myopically--on the actual sentence[7] that Kerr received after the state judge weighed the relevant factors in aggravation and mitigation, our friend seeks to rewrite the teachings of Simmons and Edmonds.  We, however, are bound to apply the law as it exists, not as our colleague would like it to be.  Because the maximum possible prison sentence that Kerr faced for his prior state convictions exceeded one year, and because that potential punishment was far from hypothetical,[8] we hold that Kerr's prior state convictions

---

[7] The dissent says that it does not argue "for an assessment of the defendant's actual sentence" but rather "for an assessment of the defendant's actual sentencing range."  Dis. op. at 27 n.1.  In our view, however, this is a distinction without a difference, as both are inconsistent with the reasoning of Simmons and Edmonds.

[8] Our holding today is not, as the dissent paints it, "Harp redux," nor is it parodoxical.  Harp summarily branded every defendant facing an ACCA enhancement for his prior North Carolina convictions as the worst possible offender under North Carolina's sentencing scheme.  While Simmons rejected that hypothetical approach to federal sentencing, we subsequently made clear "that the qualification of a prior conviction [as a predicate offense] does not depend on the sentence [a defendant]
(Continued)

14

qualify as predicate felonies for sentencing under the ACCA. Our holding remains faithful to our directive in Simmons requiring that sentencing courts examine "three pieces of evidence: the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range," 649 F.3d at 247 n.9. The district court properly considered these three elements and therefore did not err in sentencing Kerr as an armed career criminal.

IV.

Kerr also contends that the district court erred in denying his motion to vacate his § 922(g)(1) conviction and dismiss the indictment, again because he lacked the requisite predicate felony offense.[9] In order for a defendant to be convicted of possession of a firearm by a convicted felon, he must have been previously convicted of a crime punishable by a term of imprisonment exceeding one year. 18 U.S.C. § 922(g)(1).

---

actually received but on the maximum sentence that he could have received for his conviction." Edmonds, 679 F.3d at 176. Our decision today flows from a straightforward application of our precedent.

[9] We asked the parties to brief whether the mandate rule foreclosed the district court, on remand, from considering Kerr's challenge to his conviction. Both parties contend that the mandate rule does not foreclose this argument, and we agree.

As we have already explained, Kerr faced a presumptive maximum sentence of 14 months' imprisonment for his state convictions. Therefore, Kerr has the requisite predicate felony for his § 922(g)(1) conviction. We thus hold that the district court did not err in denying Kerr's motion to vacate his conviction and dismiss the indictment.

V.

Finally, we asked the parties to brief whether Kerr's prior appellate counsel in his first appeal rendered ineffective assistance because he failed to challenge Kerr's conviction on the basis that Kerr lacked a predicate felony.

When we remanded this case to the district court following Kerr's first appeal, the district court considered Kerr's challenge to his conviction on the merits. And today we have concluded that Kerr is not actually innocent of his § 922(g)(1) conviction on the basis that he lacks a predicate felony. As a result, Kerr's contention that his prior appellate counsel was ineffective for failing to raise this very issue in his first appeal is now moot.

## VI.

For the reasons given, we affirm the district court's judgment.

AFFIRMED

DAVIS, Circuit Judge, dissenting:

Respectfully, I dissent.

The majority opinion runs counter to Supreme Court precedent, Carachuri-Rosendo v. Holder, 130 S. Ct. 27 (2010), and effectively guts our Circuit precedent, United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). It violates principles of comity and federalism by directing federal district courts to ignore the careful sentencing decisions of their state counterparts. And it goes to such lengths all to affirm a twenty-two-year sentence imposed on a fifty-one-year old mentally ill veteran who had previously never served more than ten months in prison, tagging him with the moniker "armed career criminal." We can do much better than this.

The Armed Career Criminal Act requires a fifteen-year minimum prison term for a defendant convicted of being a felon in possession of a firearm if he had three previous convictions "for a violent felony or a serious drug offense." 18 U.S.C. §§ 924(e)(1), 922(g). A "violent felony" is defined as, among other things, "any crime punishable by imprisonment for a term exceeding one year." Id. § 924(e)(2)(B). The issue in this case is: When a North Carolina state judge has made a finding that mitigating factors are present and sufficient to outweigh any aggravating factors, and the defendant's mitigated sentencing range for a North Carolina conviction therefore does not exceed

18

one year, is the conviction for a crime "punishable by imprisonment for a term exceeding one year"?

The answer is and should be no, but the majority answers yes. It holds that federal courts should ignore the defendant's mitigated range of imprisonment as determined by the North Carolina judge, N.C. Gen. Stat. § 15A-1340.16(b), and instead look to the sentence the state judge could have imposed had she decided, hypothetically, to ignore her own finding that mitigating circumstances justified a sentence in a range that cannot exceed one year, ante, at 13. See N.C. Gen. Stat. § 15A-1340.16(c).

The majority's answer is fantasy. It inserts an Alice-in-Wonderland analysis into what should be a straightforward question of statutory construction. But most troubling about the majority opinion is that it resurrects a speculative mode of analysis that we – on the foundation of unmistakable Supreme Court authority – discarded in Simmons, 649 F.3d at 237. A bit of history illustrates why the majority opinion is déjà vu.

In United States v. Harp, 406 F.3d 242, 245-46 (4th Cir. 2005), we held that a North Carolina conviction for possession with intent to distribute marijuana was, for purposes of the career offender Guideline, U.S. Sentencing Guideline § 4B1.1(a), a predicate "controlled substance offense" "punishable by imprisonment for a term exceeding one year." Even though the

defendant's maximum possible punishment was only twelve months, we held that the proper inquiry was whether a hypothetical defendant with the worst possible criminal history "could" have received a sentence of over twelve months for committing the same crime. Id. at 246. In other words, the key inquiry was: What was a possible outcome for a hypothetical defendant who committed the same crime?

We rejected this speculative approach in Simmons, holding that "the mere possibility that [the defendant's] conduct, coupled with facts outside the record of conviction, could have authorized a conviction of crime punishable by more than one year's imprisonment cannot and does not demonstrate that [the defendant] was actually convicted of such a crime." 649 F.3d at 244-45 (quotations and citations omitted) (emphasis added). The district court in Simmons, relying on Harp, had applied the Controlled Substances Act sentencing enhancement; it found that the defendant's prior North Carolina conviction for marijuana possession – for which he faced no possibility of imprisonment – qualified as a felony drug offense "punishable by imprisonment for more than one year," 21 U.S.C. § 802(44). Id. at 240-41. We vacated the defendant's sentence and put an end to Harp. Id. at 241.

The primary basis for our decision was Carachuri-Rosendo, 130 S. Ct. at 2577, a Supreme Court precedent involving the

20

Immigration and Nationality Act. Simmons, 649 F.3d at 244-45. The issue there was whether a Texas conviction for misdemeanor possession of Xanax without a prescription qualified as an "aggravated felony" punishable by imprisonment for more than one year. Carachuri, 130 S. Ct. at 2580-81. The Fifth Circuit held that it did; the Supreme Court reversed, holding that "the mere possibility, no matter how remote," that the defendant could have received a two-year sentence had he been charged in federal court for the same criminal conduct did not transform the Texas conviction into an aggravated felony. Id. at 2583.

Carachuri involved a different statutory scheme and an analysis with multiple layers of speculation, but we concluded in Simmons that the relative simplicity of the Controlled Substances Act analysis did "not render the Carachuri holding inapplicable." Simmons, 649 F.3d at 248. Instead, we construed Carachuri as a prohibition on considering "facts not at issue in the crime of conviction" in determining whether a conviction qualifies as a predicate felony. Id. at 248 (quotations and citation omitted).

Which brings me to this case: It is difficult to see how the majority's hypothetical mode of analysis does not run square into the teeth of what Carachuri and Simmons seek to prohibit. As the majority opinion makes clear, the North Carolina state judge acted consistent with the provisions of the North Carolina

21

Structured Sentencing Act: she made a finding that Kerr's mitigating factors outweighed those in aggravation, N.C. Gen. Stat. § 15A-1340.16(b); Kerr had to prove those findings by a preponderance of the evidence, id. § 15A-1340.16(a); her mitigation finding was – and had to be – in writing and part of the record, id. § 15A-1340.16(c); and she used the mitigation finding to arrive at a sentencing range of eight to ten months, as contemplated by North Carolina law.

Despite all of this, the majority concludes that Kerr's conviction was for a "crime punishable by imprisonment for a term exceeding one year" because the North Carolina state judge "may," ante, at 13, have nonetheless imprisoned Kerr for up to fourteen months. In other words, Harp redux: "[T]he mere possibility, no matter how remote," Carachuri, 130 S. Ct. at 2583, coupled with an analysis that ignores a fact in the record, is sufficient to conclude that Kerr could have received a sentence of over one year. In doing so, it transforms Kerr into an armed career criminal deserving of a minimum of fifteen years of "3 hots and a cot," People v. Shulman, 843 N.E.2d 125, 134 (N.Y. 2005), on the tab of United States taxpayers.

The majority responds to all this with a paradox: first, it says that the issue in this case was not before us in Simmons, ante, at 13 ("Kerr's appeal presents an issue that neither Simmons nor its progeny expressly addressed"); second, it says

22

that a footnote in Simmons resolves this case, ante, at 15 ("Our holding remains faithful to our directive in Simmons requiring that sentencing courts examine 'three pieces of evidence: the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range,' 649 F.3d at 247 n.9.").

Let's unscramble that egg:  The majority's position is that although Simmons does not mandate a particular outcome here, its "directive" is nonetheless consistent with the majority's decision. Wrong on both counts. But, even if Simmons were deemed in some sense "consistent" with the majority's decision, the decision I reach is equally "consistent" and achieves the more sensible result.

The majority's first argument, that Simmons does not mandate a particular outcome here, is incorrect because it is based on a misunderstanding of the issue in this case. The majority frames the issue as: "Must a district court, in determining whether a defendant has the requisite predicate felonies for sentencing as an armed career criminal, consider the fact that the defendant received a mitigated sentence of less than one year in prison under North Carolina law for those felonies?" Ante, at 13 (emphasis added). That framing subtly misconstrues the issue in this case: it is not the "fact" of the defendant's actual sentence that is relevant or the focus of

23

this analysis, but the defendant's actual sentencing range. The North Carolina state court judge made an express finding – a real-world fact - that mitigating factors outweighed those in aggravation; indeed, she made that finding because it is a predicate to sentencing in the mitigated range. N.C. Gen. Stat. § 15A-1340.16(b).

The majority's framing of the issue seems to be based on a peculiar understanding of the North Carolina Structured Sentencing Act: it thinks that a North Carolina judge is always in the presumptive range because she has the discretion to sentence in that range even after she's made the mitigation finding. State v. Bivens, 573 S.E.2d 259, 262 (N.C. Ct. App. 2002).

Although the majority is correct that a North Carolina judge retains the discretion to sentence in the presumptive range even when the judge finds several mitigating factors, the existence of that possibility alone is an insufficient basis for ignoring the range as determined according to the North Carolina Structured Sentencing Act. We said as much in Simmons: North Carolina judges always have the discretion to use the presumptive range even after the state has proven the existence of aggravating factors, N.C. Gen. Stat. § 15A-1340.16(a), but we stated that federal district courts should pay close attention to the actual presence and proof of those aggravating factors,

24

rather than some hypothetical analysis, because it is a more coherent and just analysis that better informs whether a defendant is deserving of a major imprisonment term. Simmons, 649 F.3d at 244-45, 247 n.9. In the face of this, the majority opinion is silent on why the judge's retained discretion renders her decision to affirmatively make the mitigation finding and to impose a sentence based on that finding a legal nullity. If anything, we should honor the judge's mitigation finding because, as the counterpart to the aggravation finding, it is a predicate to deviating from the presumptive range (in this case, to the mitigated range). N.C. Gen. Stat. § 15A-1340.16(b).

In Carachuri, the Court acknowledged that Texas law afforded prosecutors broad discretion in determining whether to seek a conviction whose punishment would satisfy an element of federal law (there, in the immigration context); nevertheless, that fact did not persuade the Court to base its analysis of federal law on the existence of such discretion. See 130 S. Ct. at 2588. It is unclear to me why, if the existence of state prosecutorial discretion is not an acceptable basis for an interpretation of federal immigration law that leads to draconian outcomes, the existence of a similar judicial discretion should permit an interpretation of federal sentencing law that, correspondingly, leads to draconian outcomes, as the majority concludes here. Paradox, indeed.

25

The majority's approach builds an unwarranted asymmetry into our treatment of North Carolina convictions, where we pay special attention, if not conclusive attention, to a finding of aggravation, but purposely ignore a judge's finding of mitigation. To build our jurisprudence on this asymmetry expresses the view that federal sentencing courts do not really care about a defendant's criminal background – or at least, they only care when it offers up the opportunity to send him to prison for a longer period of time than common sense and simple justice demand.

The majority's second argument is that its holding "remains faithful to our directive in Simmons requiring that sentencing courts examine 'three pieces of evidence: the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range,' 649 F.3d at 247 n.9," ante, at 15. This protestation is unavailing. Indeed, what a member of today's majority said in railing against the en banc majority in Simmons applies with genuine force here: "The majority opinion puts great weight on footnote [9] of [Simmons] to undergird its position; but that weight is more than the footnote can bear." Simmons, 649 F.3d at 255 (Agee, J., dissenting). The core of Simmons is (obviously) its holding, informed by Supreme Court precedent, of how the "mere possibility" of a defendant's conduct, "coupled with facts outside the record of conviction,"

26

was insufficient for concluding that a conviction was punishable by more than one year's imprisonment. 649 F.3d at 244-45 (quotations and citations omitted) (emphasis added). The majority today makes that line of inquiry sufficient: Kerr's criminal conduct, coupled with the "mere possibility" that a judge <u>could</u> have exercised her discretion to ignore her own finding of mitigation (a real-world fact in the record), transforms Kerr's conviction from one for which he could only receive eight to ten months into a "crime punishable by imprisonment for a term exceeding one year." <u>Id.</u> § 924(e)(2)(B).[1] Because such an analysis is contingent on too many assumptions, it is quintessentially "hypothetical" and therefore foreclosed by <u>Simmons</u> and <u>Carachuri</u>.

The majority's constricted reading of <u>Simmons</u> stems from its refusal to acknowledge the principles that animated the core

---

[1] The majority is determined to hang its hat on <u>United States v. Edmonds</u>, 679 F.3d 169, 176-77 (4th Cir. 2012), for the proposition that "the actual sentence" a defendant receives is not the relevant point of analysis, <u>ante</u>, at 11-12. <u>Edmonds</u> is irrelevant because it did not involve a defendant who had received a mitigation finding. <u>Edmonds</u>, 679 F.3d at 176-77. And I am not arguing "myopically," <u>ante</u>, at 14, for an assessment of the defendant's actual sentence; I am arguing for an assessment of the defendant's actual sentencing <u>range</u>. The majority says this is a "distinction without a difference," <u>ante</u>, at 14 n.7. Of course, if the majority is comfortable contravening the finding of a state court judge in a state court conviction sustained pursuant to a state statute, then I suppose the distinction is probably one without a difference.

holding of Simmons: "well-established federalism principles" that prohibit federal courts from "reject[ing] North Carolina's judgment as to the seriousness of a North Carolina crime, prosecuted in a North Carolina court and adjudicated by a North Carolina judge," Simmons, 649 F.3d at 249; deference to the North Carolina legislature's "carefully crafted sentencing scheme," id. at 249-50; and an unwillingness to permit peculiarly harsh, "counter-intuitive and unorthodox" results in federal sentencing, id. (quoting Carachuri, 130 S. Ct. at 2585). The majority's decision is violative of all three principles: it contravenes principles of federal respect for state judges and their assessment of offenders, the convictions those offenders incur, and the just sentences they deserve; it re-writes for purposes of federal law a carefully-crafted state statute; and it results in preposterous sentences.

It is the last point that resonates most. The majority opinion is profoundly wrong on the law. But what is most concerning is how completely untethered its analysis is from the task before federal district judges in these cases: to decide who should be treated as a repeat offender responsible for a disproportionately large percentage of violent crimes, i.e., an armed career criminal. See United States v. Hawkins, 811 F.2d 210, 216-17 (3d Cir. 1987) (discussing the legislative history of the precursor to the current form of the Armed Career

Criminal Act). For example, suppose a petty criminal receives a mitigation finding because he proved to the North Carolina state judge by a preponderance of the evidence that he was under coercion when he committed the crime, N.C. Gen. Stat. § 15A-1340.16(e)(1), or was of limited mental capacity, id. § 15A-1340.16(e)(4), or was a minor, id. § 15A-1340.16(e)(6). Suppose also that the North Carolina judge, after determining that those mitigating factors outweigh those in aggravation, concludes that the defendant's range is eight to ten months. The majority's decision today tells federal district courts to repudiate that finding and treat that defendant as if he were the mastermind of the crime, a criminal genius, or an adult, and impose a fifteen-year minimum sentence (or something closer to the twenty-two year sentence imposed here). These results were not what Congress intended. Overreaching by federal prosecutors, who are sometimes anxious to wield their "armed career criminal" lancets willy-nilly, see United States v. Foster, 662 F.3d 291, 301 (4th Cir. 2011) (Wynn, J., dissenting); United States v. Foster, 674 F.3d 391, 398 (4th Cir. 2012) (Motz, J., dissenting from the den. of reh'g); id. at 403-04 (Davis, J., dissenting from the den. of reh'g), should not be rewarded in this manner.

And even if there were a colorable argument that Congress intended these types of results, the rule of lenity requires much better evidence before adoption of the majority's

29

construction of the Armed Career Criminal Act. At best, it is not at all clear what Congress wants federal courts to do with these peculiar wrinkles in North Carolina's Structured Sentencing Act, and we should not render a construction that increases the penalty on a defendant when that construction is "based on no more than a guess as to what Congress intended." Ladner v. United States, 358 U.S. 169, 178 (1958). The Armed Career Criminal Act has proved enormously complex in application; trying to decide how it should interact with equally complex state sentencing regimes is akin to proclaiming mastery at reading tea leaves. See United States v. Rodriquez, 553 U.S. 377, 405 (2008) (Souter, J., dissenting) (arguing for application of the rule of lenity to the Armed Career Criminal Act).[2] Rather than boldly continue down this dreary path, we

---

[2] As Justice Souter explained:

> The rule [of lenity] is grounded in "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should," and we have used it to resolve questions both about metes and bounds of criminal conduct and about the severity of sentencing. This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.

United States v. Rodriquez, 553 U.S. 377, 405-06 (2008) (Souter, J., dissenting) (citations omitted). See also United States v. Granderson, 511 U.S. 39, 54 (1994) ("[W]here text, structure, (Continued)

should exercise judicial restraint by holding that the statute's ambiguity coupled with the rule of lenity tips the scales in favor of the defendant, thereby allowing Congress the opportunity to provide us with additional guidance, which is so sorely needed.

Whether a prior state judge has made a written factual finding that the circumstances in a particular case are atypical and warrant application of a mitigated sentencing range that by definition does not exceed one year is a highly relevant data point in assessing whether an individual is an armed career criminal. The majority does not think so; it is wrong. But the true error it commits is justifying its decision by sticking its head in the sand of legal artifice.

I am willing to believe, and to act on the belief, that "no one - not even the prosecutors themselves - thinks [a twenty-two-year sentence on a fifty-one-year-old mentally ill veteran is] appropriate" under the circumstances of this case. Cf. United States v. Kupa, --- F. Supp. 2d ---, ---, 2013 WL 5550419, at *1 (E.D.N.Y. Oct. 9, 2013). The law affords us an opportunity to decide this case on that belief. I deeply regret the institutional ennui that precludes our doing so.

---

and history fail to establish that the Government's position is unambiguously correct . . . we apply the rule of lenity.").