**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-4215**

_____

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

     v.

KENDALL LADELL BLUE,

             Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.   James C. Dever III, Chief District Judge.  (7:11-cr-00135-D-1)

_____

Argued:  December 10, 2014          Decided:  March 13, 2015

_____

Before SHEDD, DIAZ, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Robert Daniel Boyce, NEXSEN PRUET, Raleigh, North Carolina, for Appellant.  Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Joshua L. Rogers, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2010, an informant purchased crack cocaine from Appellant-Defendant Kendall Blue on three occasions. Blue was then indicted on four counts of knowingly and intentionally distributing and possessing crack cocaine and two counts of using a firearm in furtherance of those drug crimes. A jury later found Blue guilty of the drug charges, but acquitted him on the firearms charges.

On appeal, Blue challenges two evidentiary rulings: (i) the denial of his motion to suppress evidence, and (ii) the exclusion of the informant's prior drug convictions, which Blue offered for impeachment purposes. Blue also challenges his sentence, contending that the district court erred in imposing two sentencing enhancements and an upward departure. For the reasons set forth below, we find these arguments are without merit. Accordingly, we affirm the district court in all respects.

I.

A.

In 2010, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Robeson County Sheriff's Department in Lumberton, North Carolina initiated an investigation of Appellant-Defendant Kendall Blue. During the investigation, the

2

ATF used a confidential informant—a friend of Blue's who had purchased drugs from him in the past—to make three controlled purchases of crack cocaine from Blue.

According to testimony at trial, Blue would occasionally (but not always) carry a gun while selling drugs. For example, the informant testified that Blue had a handgun in a holster on his hip during the second purchase. At the ATF's request, the informant also asked to purchase a gun from Blue during the second purchase. Blue stated he could get the informant a gun, but he did not have one for sale at that time.

During the third purchase, the informant asked Blue what kind of gun he carried, and again asked whether Blue could get him one. In response, Blue gave the informant a handgun, but ultimately took it back without offering to sell it. The informant then purchased a shotgun from another individual who was in Blue's garage during the drug deal. The informant did not, however, purchase a firearm from Blue. The informant also testified that he never felt threatened by Blue's gun.

On September 28, 2011, three ATF agents met with Blue outside his residence. The parties dispute what happened at this meeting. The ATF agents testified that Blue voluntarily entered the agents' vehicle, admitted to selling cocaine, and then gave them permission to search his car for firearms, where they found two handguns and an assault rifle. In contrast, Blue

3

alleges that he believed he was in custody upon entering the car, that he was not free to leave, that he was questioned and frisked without being read his <u>Miranda</u> rights, and that he did not give the agents permission to search his car.

## B.

On October 25, 2011, a grand jury returned a six-count indictment, charging Blue with conspiring to distribute at least 50 grams of crack cocaine (Count One); twice distributing at least 50 grams of crack cocaine (Counts Two and Three); possessing a firearm in furtherance of the drug trafficking crime charged in Count Three (Count Four); distributing at least five grams of crack cocaine (Count Five); and possessing a firearm in furtherance of the drug trafficking crime charged in Count Five (Count Six).

On August 2, 2012—nearly eight months after the deadline to file pre-trial motions and only four days before trial—Blue filed a motion to suppress his statements made during the encounter with the ATF agents outside of his home. In the motion, Blue contended that the ATF agents did not advise him of his constitutional rights to an attorney and to remain silent. He further contended that the agents searched his car and seized the weapons without his permission.

4

At the beginning of the trial, Blue's attorney requested that the district court rule on the motion to suppress. The district court denied the motion on procedural grounds as untimely under Rule 12 of the Federal Rules of Criminal Procedure. The district court also noted that it would deny the motion on the merits even if the motion were timely. The district court further suggested that, in the event Blue was ultimately found guilty, the government should consider seeking an obstruction-of-justice sentencing enhancement based on his statements in the motion.

Notwithstanding the district court's ruling, Blue's attorney then proffered an affidavit in support of the motion. Although Blue's attorney stated that he understood the court's ruling, he asked to submit the affidavit "just . . . to complete the record." J.A. 38. In the affidavit, Blue swore that he was not read his "Miranda rights" during his encounter with the ATF agents; that he believed he was in custody during the encounter; and that he "did not give agents permission to seize the firearms in the car." S.J.A. 615-16. The district court later found that these statements were "directly contradicted" by the ATF agents' testimony. J.A. 512.

C.

After the court denied Blue's suppression motion, the parties proceeded to trial. During trial, Blue's attorney sought to impeach the informant's credibility by questioning the informant about his prior convictions for larceny and possession of cocaine with intent to deliver. The government's counsel objected, arguing that the convictions were inadmissible under Rule 609 of the Federal Rules of Evidence and United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), because Blue failed to establish that the confidential informant was convicted of felonies that were punishable by more than a year in prison. Blue's counsel admitted that he did not know the potential maximum sentences under North Carolina law for the cocaine convictions, but suggested that Simmons may not apply in the context of determining admissibility under Rule 609.[1]

The district court overruled the government's objection as to the larceny conviction, finding it admissible under Rule 609(a)(2) because the conviction was relevant to the element of

---

[1] In Simmons, we addressed whether a prior state-law conviction constituted a "felony drug offense" warranting sentencing enhancements under the Controlled Substances Act. 649 F.3d at 239-40. In making this inquiry, we held that courts must look to the actual sentence the defendant could have received–not the maximum sentence a hypothetical defendant could have received under North Carolina law for the same conviction. Id. at 244-45. In doing so, we overruled circuit precedent holding that the hypothetical sentence controlled. Id. at 245-47.

dishonesty. The court sustained the objection as to the cocaine convictions, however, finding they were inadmissible under Rule 609(a)(1) because Blue failed to show that the informant could have been sentenced to more than one year in prison.

On August 7, 2012, the jury convicted Blue of the four drug offenses and acquitted him of the two firearms offenses.

D.

Blue's presentence investigation report (PSR) recommended several sentencing enhancements, two of which are relevant here. First, the PSR recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with Blue's drug trafficking activities. Second, the PSR recommended a two-level enhancement under U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice. In support, the PSR concluded that Blue lied in his affidavit when he described his encounter with the ATF agents. The PSR calculated Blue's total offense level as 42, which, combined with a Criminal History Category of II, yielded an advisory guidelines range of 360 to 480 months' imprisonment for Counts One through Three, and 240 months' imprisonment for Count Five, to run concurrently.

Blue objected to both enhancements. First, he claimed that the jury's verdict acquitting him of the firearms charges

precluded application of the two-level enhancement for possession of a dangerous weapon. Second, he asserted that his affidavit did not provide materially false information to the court, thus barring any enhancement for obstructing the administration of justice.

At sentencing, the district court overruled Blue's objections to both enhancements. The court did, however, sustain several of Blue's other objections (none of which are relevant to this appeal) and then calculated Blue's total offense level as 36. The court also granted a one-level upward departure to Blue's Criminal History Category based on the duration of Blue's criminal drug activity (dating back to at least 2003 according to testimony by the informant) and his possession of a firearm in connection with the drug offenses, moving him from a Category I to a Category II.[2] The district court then sentenced Blue to 252 months' imprisonment on Counts One, Two and Three, and 240 months' imprisonment on Count Five, to run concurrently. Blue now appeals.

---

[2] The PSR calculated Blue's criminal history as a Category II. Approximately one week before the sentencing hearing, the district court gave notice to the parties that it would consider an upward departure. At sentencing, the district court sustained Blue's objection to the PSR's inclusion of one of his prior convictions, which reduced his Criminal History Category from a II to a I. Later in the sentencing hearing, however, the district court granted an upward departure, raising Blue's Criminal History Category back to a II.

II.

A.

Blue first contends that the district court erred in denying his motion to suppress without holding an evidentiary hearing. We review a district court's denial of an untimely motion to suppress for clear error. United States v. Sweat, 573 F. App'x 292, 295 (4th Cir. 2014) (citing United States v. Ruhe, 191 F.3d 376, 385 (4th Cir. 1999)).

Under Rule 12 of the Federal Rules of Criminal Procedure, the moving party must file a motion to suppress either before trial or by the deadline established by the district court. Fed. R. Crim. P. 12(b)(3)(C), 12(c)(1). The failure to file such a motion by the specified pretrial deadline operates as a waiver unless the court finds "good cause" for the delay. Fed. R. Crim. P. 12(c)(3); see also United States v. Moore, 769 F.3d 264, 267-68 (4th Cir. 2014) (affirming ruling that defendant's untimely motion to suppress was waived); Sweat, 573 F. App'x at 295 (noting that "we rarely grant relief from the denial of an untimely suppression motion").

Blue does not argue that he had good cause for filing his motion nearly eight months after the court-ordered deadline. He notes only that multiple attorneys represented him throughout this lawsuit, and suggests that his current attorneys would have timely filed the motion if they had represented him before the

9

deadline. Blue does not, however, assert that his prior counsel rendered ineffective assistance. Nor does he deny that the information contained in his motion to suppress was known to him since at least September 28, 2011, the date of his meeting with the ATF agents. With this information, Blue's original attorneys could have filed the motion to suppress before the December 8, 2011 court-ordered deadline. But they did not. Under these circumstances, the district court did not clearly err in refusing to entertain the motion. See Ruhe, 191 F.3d at 386-87 (holding that good cause typically exists when a defendant does not know the basis for the motion until after the time for such a motion had expired); United States v. Chavez, 902 F.2d 259, 263 (4th Cir. 1990) (observing that courts will generally deny untimely suppression motions where the defendant proffers only a "dubious excuse" for missing the court-imposed deadline).

B.

Blue next challenges the district court's exclusion of the informant's prior convictions for possession and sale of cocaine, which Blue offered for impeachment purposes.

We review the district court's evidentiary rulings for abuse of discretion, which occurs only when the district court's decision is guided by erroneous legal principles or rests upon a

10

clearly erroneous factual finding.  United States v. Thomas, 669 F.3d 421, 427 (4th Cir. 2012).  Further, evidentiary rulings are subject to harmless error review, such that any error is harmless where we may say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error."  United States v. Cone, 714 F.3d 197, 219 (4th Cir. 2013) (quoting United States v. Johnson, 617 F.3d 286, 292 (4th Cir. 2010)).

The district court determined that the informant's prior convictions were inadmissible under Rule 609 of the Federal Rules of Evidence.  Under that Rule, a party may use a prior conviction to impeach a witness's credibility if (among other requirements) the crime for which the witness was convicted "was punishable . . . by imprisonment for more than one year" in "the convicting jurisdiction."  Fed. R. Evid. 609(a)(1) (emphasis added).  As the party seeking admission of the evidence, Blue has the burden to demonstrate that the informant's prior cocaine convictions were each punishable "by imprisonment for more than one year" under North Carolina law.  United States v. Cunningham, 638 F.2d 696, 697 (4th Cir. 1981).

At trial, Blue's counsel conceded that the informant was sentenced to only "eight to ten months" for his prior cocaine convictions.  J.A. 197.  Blue's counsel also expressly admitted

11

that he did not know the potential maximum sentences under North Carolina law for the cocaine convictions. Citing Simmons, the district court concluded that the relevant inquiry for Rule 609 purposes was the maximum sentence the informant could have received–not the maximum sentence a hypothetical defendant could have received under North Carolina law for the same conviction. Accordingly, the district court held that the informant's prior convictions were for less than one year, and so were inadmissible.

The parties now dispute whether Simmons governs the Rule 609(a)(1) analysis.[3] We need not decide this issue, however, because Blue has failed to demonstrate that the informant's convictions satisfy Rule 609 regardless of whether Simmons applies.

---

[3] As Blue correctly notes, Simmons addressed whether a prior state conviction for marijuana possession constituted a prior "felony drug offense" warranting sentencing enhancements under the Controlled Substances Act (CSA). 649 F.3d at 239. It did not address the standard for determining whether a state law conviction is admissible under Rule 609. On the other hand, the government rightfully points out that the relevant language in Rule 609(a)(1) is virtually identical to that of the CSA. Compare Fed. R. Evid. 609 (a)(1) (requiring admission of prior convictions that, "in the convicting jurisdiction," were "punishable . . . by imprisonment for more than one year") with 21 U.S.C. § 802(44) (defining a "felony drug offense" as one "that is punishable by imprisonment for more than one year under any law . . . of a State"). Neither side points to any binding precedent supporting their respective positions. Regardless, for the reasons set forth above, we decline to decide this issue here.

12

On appeal, Blue's counsel asserts that the potential maximum sentence for the cocaine convictions was greater than twelve months, which would satisfy Rule 609)(a)(1), assuming Simmons does not apply. But Blue did not make this argument during trial. Rather, he expressly conceded that he did not know the potential maximum sentence for the informant's cocaine convictions. J.A. at 197 (Blue's counsel conceded that "[t]he sentence was eight to ten months" but that he did not "know what the penalty that he could have received was" (emphasis added)).[4] He also did not cite the applicable North Carolina statutes governing the informant's convictions.[5] As such, even if we accept his contention that Simmons does not apply here, Blue still did not meet his burden of proving that the informant's prior cocaine convictions were punishable by imprisonment for

---

[4] During voir dire, Blue's counsel asked the informant whether his convictions carried a punishment of more than one year, and the informant replied that they did. But on cross-examination, government's counsel asked the informant whether he knew what Blue's counsel meant when he asked him that question. The informant replied "[n]o, not really" and stated he received only probation for the convictions. J.A. 218. This is far from "concrete proof" that the informant had been convicted of a crime punishable by more than one year. United States v. Meserve, 271 F.3d 314, 328 (1st Cir. 2001).

[5] Blue did not cite the statutes setting forth the maximum sentences for the informant's prior cocaine convictions (see N.C. Gen. Stat. §§ 90-90; 90-95) until two days after oral argument on this appeal, when he filed a notice of supplemental authority. Of course, this filing came far too late to satisfy Blue's obligation to provide this information in the district court proceeding.

13

more than one year.  See Cunningham, 638 F.2d at 697-98; Meserve, 271 F.3d at 327-28 (finding that the "party seeking to introduce evidence of a prior conviction for impeachment purposes under Rule 609 was obligated to have researched [the witness's] prior offenses and to have determined that they were admissible").  Accordingly, the district court did not abuse its discretion by declining to admit evidence of the informant's prior cocaine convictions.

Even if the district court did err by applying Simmons to Rule 609, we conclude that any such error was harmless.  The government produced substantial evidence of Blue's guilt, including video and audio recordings of the cocaine purchases taken from equipment worn by the informant, the actual crack cocaine purchased by the informant, the testimony of several witnesses regarding Blue's long history of drug dealing, and Blue's own admission to the ATF agents that he sold cocaine. The district court's refusal to allow Blue to impeach the informant with the cocaine convictions did not undermine any of this evidence.

In addition, the district court allowed Blue to ask the informant about the informant's prior larceny conviction, as well as whether the informant had prior convictions waived in exchange for cooperation with the government.  Blue thus had several opportunities to impeach the informant.  We are

14

satisfied that Blue's inability to also question the informant regarding his prior cocaine convictions did not "substantially sway[]" the jury's verdict. Cone, 714 F.3d at 219.

## III.

We now turn to Blue's sentence. "[W]e review the district court's sentencing procedure for abuse of discretion, and must reverse if we find error, unless we can conclude that the error was harmless." United States v. Gomez-Jimenez, 750 F.3d 370, 379 (4th Cir. 2014) (citation omitted). In determining whether the district court properly applied the Sentencing Guidelines ("Guidelines"), we "review the district court's legal conclusions de novo and its factual findings for clear error." Id. at 379-80 (citation and internal quotations omitted).

## A.

Blue first argues that the district court improperly applied the sentencing enhancement for obstruction of justice. The Guidelines provide for a two-level enhancement when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the . . . sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Examples of covered conduct include providing "materially false information to a judge." Id. § 3C1.1 cmt.

15

n.4(F).   Information is materially false when, if believed, it "would tend to influence or affect the issue under determination."   Id. § 3C1.1 cmt. n.6.   As we have previously held, the obstruction enhancement is warranted when a defendant lies in a suppression hearing regarding whether police administered a Miranda warning.   United States v. Bonsu, 291 F. App'x 505, 515 (4th Cir. 2008) (per curiam).

Here, the district court concluded that Blue "willfully lied about a material matter" in his affidavit when he swore that the ATF agents placed him in custody without reading him his Miranda rights and failed to obtain his permission to search his car.   J.A. 514.   On appeal, Blue does not contest the district court's conclusion that he lied in his affidavit. Rather, he asserts that the obstruction enhancement should not apply because he only submitted his affidavit as a proffer under Rule 103(a)(2) of the Federal Rules of Evidence to preserve the suppression issue for appeal.[6]   In essence, Blue contends that the obstruction enhancement should not apply because he directed his lies to this Court, rather than to the district court. Unsurprisingly, we reject this reasoning.

---

[6] Blue did not make this argument below.   Rather, he contended only that his affidavit was truthful.   At the sentencing hearing the district court concluded he lied in the affidavit, and Blue does not contest this finding on appeal.

16

Offers of proof under Rule 103(a)(2) serve at least two purposes: (i) to permit the district court to "reevaluate" or "reconsider" its ruling; and (ii) to provide a record from which an appellate court can determine whether the district court erred and whether the error requires reversal. See 21 Wright & Miller, Federal Practice and Procedure § 5040 (2d ed. 1977); United States v. Yarrington, 634 F.3d 440, 447 (8th Cir. 2011). Regardless of which purpose the movant has in mind, the ultimate goal is the same: to persuade either the trial judge or the appellate panel to rule in the movant's favor. It simply makes no difference whether Blue submitted the affidavit in an attempt to change the district court's mind or to make the record for appeal: either way, he provided "materially false information to a judge." U.S.S.G. § 3C1.1 cmt. n.4(F).[7] Accordingly, we conclude that the affidavit justifies the district court's imposition of the two-level obstruction enhancement.[8]

---

[7] Notably, Application Note 4(F) does not distinguish between district and appellate judges.

[8] Of course, a proffer under Rule 103 intended to preserve an issue for appeal will not always lead to an obstruction enhancement. For example, here Blue could have argued on appeal that the district court erred in concluding that he lied in the affidavit. He also could have argued that the district court erred in concluded he lied without affording him an opportunity to cross-examine the ATF agents regarding their September 28, 2011 meeting. Assuming arguendo that we agreed, we would have reversed the obstruction enhancement. Rather than make these arguments, however, Blue asserted only that an evidentiary proffer intended to preserve an issue for appeal can never serve
(Continued)

17

B.

Blue next argues that the district court improperly applied a sentencing enhancement for possession of a dangerous weapon in connection with his drug trafficking offenses. Under U.S.S.G. § 2D1.1(b)(1), a two-level enhancement should be applied "[i]f a dangerous weapon (including a firearm) was possessed." This "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. § 2D1.1 cmt. n.11(A) (emphasis added). Again, we conclude that the district court did not err in applying this enhancement.

Blue contends his acquittal on the firearms charges prohibited the district court from applying this enhancement. But it is well-settled that a sentencing court may consider acquitted conduct as long as the conduct is established by a preponderance of the evidence. See United States v. Watts, 519 U.S. 148, 154 (1997); United States v. Lawing, 703 F.3d 229, 241 (4th Cir. 2012). Notwithstanding Blue's acquittal on the firearms charges, we conclude that the district court did not err in determining by a preponderance of the evidence that Blue possessed a firearm in connection with his drug offenses. The

---

as a grounds for an obstruction enhancement. For the reasons set forth above, we decline to adopt this sweeping rule.

18

trial testimony conclusively established that Blue possessed a handgun on his person during the second and third drug purchases. Witnesses also testified that the handgun could be used to protect the drug proceeds or deter theft during the purchases. This evidence warranted application of the weapons enhancement under § 2D1.1(b)(1). See United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010) (stating that a § 2D1.1(b)(1) weapons enhancement is appropriate when a firearm's "location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business" (citation and internal quotations omitted)).[9]

## C.

Finally, Blue contends the district court erred in granting the government's motion for an upward departure. An upward departure may be warranted if "reliable information indicates

---

[9] Blue contends that Manigan is inapposite because, unlike here, evidence in that case demonstrated that the firearms presented a real risk or threat of violence. We reject this limited reading. Manigan also held that a firearm will be considered sufficiently connected to a drug offense when it is "readily available to protect" the participants in the deal. 592 F.3d at 629. Here, the evidence demonstrated that Blue had a handgun on his person during both the second and third drug purchases. The district court did not clearly err in finding that this evidence demonstrated that Blue may have used the handgun for protection during the drug purchases.

19

that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). "When reviewing a departure, we consider whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Howard, 773 F.3d 519, 529 (4th Cir. 2014) (citation omitted).

At sentencing, the district court concluded that Blue's Criminal History Category was a level I based on his prior conviction for possession of marijuana, for which he received no term of imprisonment. See U.S.S.G. § 4A1.1(c). The government then moved for an upward departure to a level VI, claiming a level I substantially under-represented Blue's criminal history and the likelihood he would commit other crimes upon release. See id. § 4A1.3(a)(1). The district judge refused to go all the way to level VI, but did grant a one-level departure to level II. In doing so, the district court noted that, according to testimony by the informant that the district court found credible, Blue had dealt crack for almost a decade.

On appeal, Blue makes two arguments in support of his contention that the district court erred in granting an upward departure. First, he contends that the district court's

20

February 25, 2013 order giving notice of a possible departure from the Sentencing Guidelines was deficient under Rule 32(h) of the Federal Rules of Criminal Procedure. According to Blue, this "boilerplate notice" deprived him of an opportunity to adequately prepare a defense to the court's contemplated upward departure.

Because Blue failed to object to the district court's allegedly inadequate notice below, we review for plain error. See United States v. McClung, 483 F.3d 273, 276 (4th Cir. 2007). "To establish error, the appealing party must show that an error (1) was made, (2) is plain (i.e. clear or obvious), and (3) affects substantial rights." United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). The appealing defendant bears the burden of showing plain error. United States v. Carthorne, 726 F.3d 503, 510 (4th Cir. 2013).

We conclude that Blue cannot satisfy even the first prong of plain error analysis because the district court did not err in the first instance. Federal Rule of Criminal Procedure 32(h) only requires that an upward departure notice "specify any ground on which the court is contemplating a departure." The district court's notice plainly satisfied that Rule. The notice stated that the court was contemplating an upward departure because reliable information indicated that Blue's criminal history category substantially under-represented the seriousness

21

of his criminal history and the likelihood that Blue would commit other crimes. The notice also cited the relevant Sentencing Guideline, U.S.S.G. § 4A1.3(a)(2)(E), and several Fourth Circuit decisions applying that Guideline. Blue thus had sufficient notice to prepare his objections to the upward departure.[10]

Second, Blue asserts that the district court engaged in impermissible double counting. "Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute." United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004) (citation omitted). As Blue acknowledges, "there is a presumption that double counting is proper where not expressly prohibited by the guidelines." United States v. Hampton, 628 F.3d 654, 664 (4th Cir. 2010). Blue contends the basis for the upward departure–his lengthy history of cocaine deals with the

_____

[10] In a notice of supplemental authority, Blue cites several cases in other jurisdictions purportedly holding that a Rule 32(h) notice must provide both factual and legal grounds for a contemplated departure. Even assuming we were bound by these out-of-circuit cases, the notice was still appropriate because it set forth both grounds. First, it provided the factual basis by citing "the seriousness of defendant's criminal history"—that is, his drug dealing since at least 2003. D.E. 108. And second, it provided the legal basis by citing the applicable sentencing Guideline and several Fourth Circuit decisions applying that Guideline.

22

informant dating back to at least 2003—was already accounted for in his base offense level under the Guidelines. Blue thus contends the district court double counted by again considering this conduct as the basis for the upward departure.

Blue is mistaken. The PSR expressly states that in determining Blue's base offense level, the probation officer did not consider the cocaine deals with the informant between 2003 and 2010. J.A. 598 (stating that the officer did not consider these deals "[t]o avoid potential double-counting"). The PSR also calculated Blue's base offense level based on 26.74 kilograms of crack cocaine. This quantity excludes the approximately 25 to 30 kilograms of crack Blue sold to the informant between 2003 and 2010. Accordingly, these sales were not accounted for in Blue's base offense level or any other Guidelines calculation. Because double counting occurs only when a consideration has been fully accounted for in another Sentencing Guidelines provision, United States v. Rivera-Santana, 668 F.3d 95, 101-02 (4th Cir. 2012), the district court did not double count. Accordingly, we affirm the district court's upward departure.

D.

Finally, even assuming that the district court erred in its application of the Guidelines, we would still affirm because any

23

error was harmless. A Guidelines error is harmless if we determine that: (i) "the district court would have reached the same result even if it had decided the guidelines issue the other way," and (ii) "the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." Gomez-Jimenez, 750 F.3d at 382 (quoting United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir. 2011)). Both prongs are satisfied here.

First, the district court made clear that it would have imposed the same sentence even if it made an error in applying the Guidelines. See J.A. 581. ("[I]f I have miscalculated the advisory Guideline range or erroneously departed in some fashion, under U.S. v. Keene . . . and U.S. v. Savillon-Matute . . . I would impose this same sentence as a variant sentence having fully considered and articulated the rationale under [Section] 3553(a).").

Second, the district court provided a thorough and persuasive § 3553(a) analysis, carefully considering Blue's individual circumstances, prior criminal record, and the likelihood he would commit future offenses. Accordingly, the sentence was substantively reasonable. See United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010) (in determining whether a sentence is substantively reasonable, we "examine[] the totality of the circumstances to see whether the

24

sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)").  Accordingly, we would affirm regardless of any purported Guidelines error.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

25